# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
July 27, 2010 Session

# IN THE MATTER OF: ARTERIA H.

**Direct Appeal from the Chancery Court for Shelby County**
**No. CH-08-1615-1    Walter L. Evans, Chancellor**

---

**No. W2010-00443-COA-R3-PT - Filed August 4, 2010**

---

This is a termination of parental rights case. Both Mother and Father appeal the trial court's decision to terminate their parental rights. After a thorough review of the record, we affirm.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Curtis D. Johnson, Jr., Memphis, Tennessee, for the appellant, Berthenia H.

W. Ray Glasgow, Memphis, Tennessee, for the appellant, Arterio H.

Robert E. Cooper, Jr., Attorney General and Reporter and Douglas Earl Dimond, Senior Counsel, for appellee, State of Tennessee, Department of Children's Services.

Erica C. Gatewood, Memphis, Tennessee, Guardian Ad Litem.

## OPINION

This case involves the termination of parental rights to Arteria H. (d.o.b 9/11/2006), who has been in state custody for the majority of her life. Arteria H. originally came into state custody when her Father, Arterio H. ("Father") brought her to the hospital in January 2007, when she was four months old and sick. At this time, Father did not know the

whereabouts of the child's mother, Berthenia H. ("Mother").[1] Mother regained custody of Arteria H. on June 5, 2007. However, it was alleged that when Mother came to the hospital to take Arteria H. home, Mother admitted to the social worker that she smoked marijuana twice a day.[2] Accordingly, the Juvenile Court of Shelby County entered an order three days later, on June 8, 2007, finding probable cause to believe Arteria H. was dependent and neglected and returning custody to the Department of Children's Services ("DCS"). On April 8, 2008, Arteria H. was adjudicated dependent and neglected by default, when Mother failed to appear at the hearing.[3] As the result of this determination, several permanency plans were entered. All of the permanency plans required Mother to obtain stable employment and stable housing.

On September 2, 2008, this action began when DCS filed its petition to terminate the parental rights of both Mother and Father to Arteria H. in the Chancery Court of Shelby County. DCS contended that Mother's parental rights should be terminated based upon (1) abandonment by willfully failing to visit for four consecutive months immediately prior to the filing of the petition pursuant to Tenn. Code. Ann. §36-1-113(g)(1)[4]; (2)

---

[1] Mother and Father have never been married.

[2] It is not clear from the record why Mother was picking the child up at the hospital. Foster Mother testified that she had custody of Arteria H. since January 2007.

[3] We note that Father was not named as a party to the dependency and neglect proceeding in Juvenile Court. Although, the record does indicate that Father was represented by appointed counsel during the Juvenile Court proceedings. Father has been incarcerated since January 2007.

[4] Tenn. Code Ann. §36-1-113(g)(1) provides for termination if "[a]bandonment by the parent or guardian, as defined in § 36-1-102, has occurred...." Abandonment, in pertinent part, is defined in Tenn. Code Ann. §36-1-102 as :

> (i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent(s) or guardian(s) of the child who is the subject of the petition for termination of parental rights or adoption, that the parent(s) or guardian(s) either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child;

> (ii) The child has been removed from the home of the parent(s) or guardian(s) as the result of a petition filed in the juvenile court in which the child was found to be a dependent and neglected child, as defined in § 37-1-102, and the child was placed in the custody of the department or a licensed child-placing agency, that the juvenile court found, or the court

(continued...)

abandonment by willfully failing to support Arteria H. pursuant to Tenn. Code Ann. § 36-1-113(g)(1); (3) for failing to comply with the requirements of the permanency plan pursuant to Tenn. Code Ann. § 36-1-113(g)(2)[5]; (4) for persistence of conditions which led to the removal of Arteria H. pursuant to Tenn. Code. Ann. § 36-1-113(g)(3)[6]; and (5) abandonment

[4](...continued)
where the termination of parental rights petition is filed finds, that the department or a licensed child-placing agency made reasonable efforts to prevent removal of the child or that the circumstances of the child's situation prevented reasonable efforts from being made prior to the child's removal; and for a period of four (4) months following the removal, the department or agency has made reasonable efforts to assist the parent(s) or guardian(s) to establish a suitable home for the child, but that the parent(s) or guardian(s) have made no reasonable efforts to provide a suitable home and have demonstrated a lack of concern for the child to such a degree that it appears unlikely that they will be able to provide a suitable home for the child at an early date;

                    *                              *                              *

(iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child; or....

[5]Tenn. Code Ann. § 36-1-113(g)2) provides for termination when "[t]here has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4...."

[6]Tenn. Code Ann. §36-1-113(g)(3) provides for termination when:

The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

                                                            (continued...)

-3-

for exhibiting a wanton disregard for the welfare of Arteria H. prior to incarceration pursuant to Tenn. Code Ann. § 36-1-113(g)(1). DCS contended that Father's parental rights should be terminated for (1) abandonment of Arteria H. by willfully failing to support Arteria H. pursuant to Tenn. Code Ann. § 36-1-113(g)(1); (2) abandonment for exhibiting a wanton disregard for the welfare of Arteria H. prior to incarceration pursuant to Tenn. Code. Ann. § 36-1-113(g)(1); and (3) for receiving a sentence of ten years or more and the child at issue being under the age of eight at the time the sentence was issued pursuant to Tenn. Code. Ann. § 36-1-113(g)(6)[7]. Further, DCS alleged that it was in the best interest of Arteria H. to terminate the parental rights of both Mother and Father.

DCS filed an amended petition on October 31, 2008. This petition is identical to the original except that it requested service by publication on Mother. The trial court appointed separate counsel for both Mother and Father, as well as a guardian ad litem.[8]

The trial court held a hearing on April 15, 2009 and May 12, 2009 on the petition to terminate parental rights. On June 30, 2009, the trial court entered an Order of Continuance. In this order, the trial court found that Mother had not complied with the permanency plans, "which required her to refrain from drugs, obtain stable housing and income, complete drug

---

[6](...continued)

> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
>
> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and
>
> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

[7] Tenn. Code Ann. §36-1-113(g)(6) provides for termination when "[t]he parent has been confined in a correctional or detention facility of any type, by order of the court as a result of a criminal act, under a sentence of ten (10) or more years, and the child is under eight (8) years of age at the time the sentence is entered by the court...."

[8] We note that both Mother and Father are represented by different counsel on appeal than they were in the trial court.

classes, and visit" Arteria H. The trial court also found that Father had been sentenced to eleven years incarceration. The trial court found that Mother had made an effort to comply with the permanency plan, but that her efforts had been hampered "due to the use of marijuana and frequent run-ins with law enforcement." The trial court also found that Mother may have been confused about the role of DCS, but that Mother did maintain contact with her case manager from Youth Villages. The trial court then continued the matter for six months and ordered DCS to create new permanency plans for both Mother and Father, and to conduct home studies on at least three of Father's relatives, and ordered both parents to secure jobs.

Prior to the filing of the Order of Continuance, DCS filed a Motion for Reconsideration and to Vacate the Order of Continuance and for a Final Order. On August 4, 2009, the trial court entered an order denying DCS' motion. In this order, the trial court specifically stated that it "found that [DCS] had not followed the reasonable efforts statute." The trial court also held that the proof shall remain open until October 13, 2009.

The trial court heard further proof on October 27 and 28, 2009. At this hearing, Mother admitted that she still did not have a job and that she had not worked since 2007. Mother also admitted that she had not obtained stable housing and had lived in at least three different places since the hearing in May 2009. Mother described her efforts to obtain employment and housing , and what she perceived as her barriers to obtaining employment and housing. Andrea Simpson ("Ms. Simpson"), a family counselor with Youth Villages, testified about her efforts to assist Mother in obtaining a job and housing, as well as Mother's own efforts. Ms. Simpson testified that since May 2009, visitation had improved and Mother's drug use was "tremendously better." However, Ms. Simpson opined that she did not believe Mother would be able to find a job, a house, and care for Arteria H. in a reasonable period of time. Mother's aunt and mother also testified about DCS' efforts to place Arteria H. in their respective homes. Sheryl Brewer-Boyle ("Ms. Boyle"), the DCS case worker assigned to Arteria H.'s case, testified about her interactions with Mother. She testified that Mother was "minimally compliant" with the permanency plan and that Mother has no stable housing.[9] Father also testified at the hearings. He testified that he was presently incarcerated, serving an eleven year sentence, but that he hoped to be released on parole soon. He further testified that he had not had any contact with Arteria H. since January 2007 nor had he attempted to make any contact. The foster mother also testified as to her relationship with Arteria H. and the development she has seen in Arteria H. while the child has been in her custody.

---

[9]Ms. Boyle is a DCS case worker based out of Fayette County. From the record, it appears that she was assigned to the case to avoid a possible conflict of interest with a DCS worker in Shelby County as the mother of A.H's foster mother is a member of the County Commission of Shelby County and also after allegations arose that Shelby County DCS workers had not followed proper procedures.

On January 13, 2010, the trial court entered its findings of fact and conclusions of law, and order terminating the parental rights of both Mother and Father to Arteria H. The trial court declined to find that Mother abandoned Arteria H. based upon a willful failure to visit, as the trial court found that Mother's visitation was often "thwarted" by DCS. The trial court also declined to find that Mother abandoned Arteria H. based upon a willful failure to support, finding that it was "questionable as to whether [Mother] had the resources to pay support" and Mother would provide clothing and gifts to Arteria H. at visitation. However, the trial court found, by clear and convincing evidence, that there was persistence of conditions and that Mother had "failed to substantially comply with the permanency plans, to wit, to obtain and maintain stable housing and employment, and it is unlikely she will be able to do so in the near future." As to Father, the trial court found that he abandoned Arteria H. by exhibiting a willful and wanton disregard for the welfare of Arteria H. prior to his incarceration. Also, the trial court found that Father's rights should be terminated pursuant to Tenn. Code Ann. § 36-1-113(g)(6) because he was sentenced to eleven years incarceration and Arteria H. was under the age of eight at the time he was sentenced. Consequently, the trial court found that grounds to terminate both Mother and Father's parental rights exist. The trial court then considered the best interest of Arteria H. and found that Arteria H. has an attachment and bond with her foster mother, that there would be "negative and traumatic consequences" if she was removed from her foster mother and returned to Mother, and that there were not strong ties and attachment between Mother and Arteria H. Moreover, the trial court found that there were no relatives of Mother or Father suitable to take custody of Arteria H. Based on these findings, the trial court terminated the parental rights of both Mother and Father to Arteria H.

Mother and Father filed separate notices of appeal on February 11, 2010. On appeal, Father raises two issues for our review:

> 1. Whether the Department of Children's Services made reasonable efforts to find a relative placement for Father's child, and if not, whether their errors rise to the level of egregiousness that the termination against Father should be reversed and remanded?
>
> 2. Whether ineffective assistance of counsel at the Juvenile Court proceedings harmed Father's parental rights as to receiving reasonable efforts by the Department of Children's Services to place the minor child with relatives?

Mother raises one issue for our review:

Whether the trial court erred in ruling that the parental rights of [Mother] should be terminated based upon persistence of conditions, based upon her lack of stable housing, past due Memphis Light Gas and Water utility bill, and her lack of income?

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only if there is a compelling state interest. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W .B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Consequently, both the grounds for termination and the best interest inquiry must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review set as forth in Tenn. R. App. P. 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). When the resolution of an issue in a case depends upon the truthfulness of witnesses, the trial judge who has had the opportunity to observe the witnesses and their manner and demeanor while

testifying is in a far better position than this Court to decide those issues. ***See McCaleb v. Saturn Corp.***, 910 S.W.2d 412, 415 (Tenn. 1995); ***Whitaker v. Whitaker***, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997). The weight, faith, and credit to be given to any witness' testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court. ***See id.***; ***see also Walton v. Young***, 950 S.W.2d 956, 959 (Tenn. 1997).

We will address the termination of Mother's and Father's parental rights separately.

## *Mother*

The trial court terminated Mother's parental rights to the child on two statutory grounds: substantial noncompliance with permanency plans pursuant to Tenn. Code Ann. §§36-1-113(g)(2), and persistence of conditions pursuant to Tenn. Code Ann. § 36-1-113(g)(3). We note at the outset, that these are two separate grounds, each having distinct elements. Often parental termination cases present fact situations which would support both a finding of substantial non-compliance and persistence of conditions. This is due to the fact that Tenn. Code Ann. §37-2-403 requires a permanency plan to be created any time a child is removed from his or her parents and placed in foster care. The requirements set forth in the permanency plan, which non-compliance with could support termination, are often directly related to remedying the conditions which led to the removal of the child from the home, which if not remedied could also support termination. However, there may be situations in which there is substantial non-compliance but not persistence of conditions, and vice versa.

Parental rights may be terminated under the statute when:

> There has been substantial noncompliance by the parent or guardian with the statement of responsibilities in a permanency plan or a plan of care pursuant to the provisions of title 37, chapter 2, part 4.

Tenn. Code Ann. § 36-1-113(g)(2). As this Court has previously explained:

> Terminating parental rights based on Tenn. Code Ann. § 36-1-113(g)(2) requires more proof than that a parent has not complied with every jot and tittle of the permanency plan. To succeed under Tenn. Code Ann. § 36-1-113(g)(2), [DCS] must demonstrate first that the requirements of the permanency plan are reasonable and related to the conditions that caused the

child to be removed from the parent's custody in the first place, *In re Valentine,* 79 S.W.3d [539,] 547; *In re L.J.C.*, 124 S.W.3d 609, 621 (Tenn. Ct. App. 2003), and second that the parent's noncompliance is substantial in light of the degree of noncompliance and the importance of the particular requirement that has not been met. *In re Valentine*, 79 S.W.3d at 548-49; *In re Z.J.S.,* 2003 WL 21266854, at *12. Trivial, minor, or technical deviations from a permanency plan's requirements will not be deemed to amount to substantial noncompliance. *In re Valentine,* 79 S.W.3d at 548; *Department of Children's Servs. v. C.L.,* No. M2001-02729-COA-R3-JV, 2003 WL 22037399, at *18 (Tenn. Ct. App. Aug. 29, 2003)(no Tenn. R. App. P. 11 application filed.)

**In re M.J.B.**, 140 S.W.3d 643, 656-57 (Tenn. Ct. App. 2004). Additionally, DCS must make reasonable efforts to assist the parent in meeting the requirements of the plan. *See* **In re D.D.V.,** M2001- 02282-COA-R3-JV, 2002 Tenn. App. LEXIS 126 (Tenn. Ct. App. 2002).

A second ground for termination of parental rights is provided for in Tenn. Code Ann. § 36-1-113(g)(3) which states:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months and:

(A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;
(B) There is little likelihood that these conditions will be

remedied at an early date so that the child can be safely

returned to the parent(s) or guardian(s) in the near future; and

(C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home;

The failure to remedy the conditions which led to the removal need not be willful. *In re T.S. and M.S.*, No. 1999-01286-COA-R3-CV, 2000 WL 964775, at * (Tenn. Ct. App. July 13, 2000)(citing *State Dep't of Human Servs. v. Smith*, 785 S.W.2d 336, 338 (Tenn. 1990)). "A parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R*. No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)(citing *In re T.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). "Where, as here, efforts to provide help to improve the parenting abilities, offered over a long period of time, have proved ineffective, the conclusion that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.* Mother has only appealed from the trial court's finding of persistence of conditions.

In *In re Audrey S*., 182 S.W.3d 838 (Tenn. Ct. App.2005), this Court held that, "based upon the statutory text and its historical development, Tenn. Code Ann. § 36-1-113(g)(3) [ground of persistence of conditions] applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." On April 8, 2008, the Juvenile Court found Arteria H. to be dependent and neglected when Mother did not appear at the hearing, and it found that mother has not worked with DCS; has admitted drug use, failed drug screens and has not participated in drug and alcohol treatment; has not completed parenting classes; and has failed to obtain stable housing and employment. The trial court found that some of the conditions which lead to the removal of Arteria H. continued to persist. Specifically, the trial court found that Mother had failed to obtain stable housing and had failed to obtain stable employment. Moreover, the trial court also found that there is little likelihood that Mother would be able to secure stable employment or housing in the near future.

We have reviewed the record and agree with the trial court's determination that some of the conditions which led to the removal of Arteria H. continued to persist. Mother admitted numerous times that she had not been employed since 2007. Further, Mother did not provide any verification for the job she allegedly had in 2007. Also, Mother admitted that she had not obtained stable housing at the time of the final hearing or at any time during the course of the proceedings. Based upon Mother's own testimony, she was essentially vagrant, staying at various places, including her aunt's home, her mother's home, her boyfriend's home, her boyfriend's mother's home, and a shelter for short periods of time before moving on to the next place. We recognize that Mother attempted to obtain stable housing and that in fact she was consistent in her efforts during the final months of this action. However, "[a] parent's continued inability to provide fundamental care to a child,

even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R*. No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)(citing *In re T.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). Here, efforts to assist Mother and Mother's own efforts to obtain stable housing and employment have proved ineffective and there is little likelihood of such improvement as would allow the safe return of Arteria H. in the near future. Mother's Youth Villages family counselor, who had been assisting Mother in her employment and housing search, testified that she did not believe Mother would be able to find a house, job, or care for the child in a reasonable time period. She further testified that Mother cannot meet the basic needs of the child and she did not recommend reunification.

The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re A.R*. No. W2008-00558-COA-R3-PT, 2008 WL 4613576 at *20 (Tenn. Ct. App. Oct. 13, 2008)(quoting *In re D.C.C.*, No. M2007-01094-COA-R3-PT, 2008 WL 588535, at *9 (Tenn. Ct. App. Mar. 3, 2008)). After reviewing the record as a whole, we find that the evidence supports the trial court's finding, by a clear and convincing standard, that some of the conditions which lead to the removal of Arteria H. still persist, that there is little likelihood that these conditions will be remedied at an early date so that the child may be returned to Mother and that the continuation of the parent-child relationship diminishes A.H's chances of an early integration into a safe, stable and permanent home. Tenn. Code. Ann. § 36-1-113(g)(3).

However, before the trial court may terminate parental rights based upon a persistence of conditions, the trial court must determine that DCS made reasonable efforts to assist the parent in remedying the conditions which led to the removal of the child. *In Re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, n.27 (Tenn. Ct. App. March 9, 2004); Tenn. Code Ann. § 37-1-166(a).[10] Mother asserts on appeal that DCS did not make

---

[10]It has been previously held in numerous cases, that Tenn. Code Ann. § 37-1-166, is applicable to parental termination cases. *See e.g. In Re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *8 (Tenn. Ct. App. March 9, 2004); *see also In re Giorgianna H.,* 205 S.W.3d 508, 518(Tenn. Ct. App. 2006). Tenn. Code Ann. § 36-1-113 is the statute which provides the grounds for termination of parental rights. Tenn. Code Ann. § 37-1-166 is the statute dealing with the efforts which must be made prior to a court entering orders committing or retaining a child within the custody of DCS. Both statutes address the obligations of DCS when separating children from their parents. By terminating parental rights, the court is committing the child to the custody of DCS. Because both statutes address the same subject, they should

(continued...)

reasonable efforts to assist her in obtaining a job or housing.

Termination on the ground of persistence of conditions implicates DCS' obligation to demonstrate that it made reasonable efforts to reunite the child with the parent. *In Re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, n.27 (Tenn. Ct. App. March 9, 2004). When DCS' obligation to make reasonable efforts is implicated, DCS must prove by clear and convincing evidence that it made reasonable efforts. *In Re R.L.F.,* 278 S.W.3d 305, 316 (Tenn. Ct. App. 2008). "This burden required that [DCS] present sufficient evidence to enable us to conclude without serious or substantial doubt, that the efforts were reasonable under the circumstances. *Id.*

The procedure for establishing reasonable efforts is set forth in Tenn. Code Ann. § 37-1-166(c). Pursuant to this statute, DCS must file an affidavit with the court to enable it to determine whether reasonable efforts have been made. Tenn. Code Ann. §37-1-166(c). This affidavit must detail (1) whether removal of the child is necessary to protect the child, and if so, what are the risks which necessitate removal; (2) identify the specific services necessary to reunite the family; (3) detail which services have been provided; and (4) state whether DCS has had the opportunity to provide services to the family and if not, explain why the services have not been provided. Tenn. Code Ann. § 37-1-166(c)(1)-(4). An affidavit which meets the requirements of Tenn. Code Ann. § 37-1-166(c) is sufficient to establish the reasonableness of DCS' efforts by clear and convincing evidence. *In re Giorgianna H.,* 205 S.W.3d 508, n.22 (Tenn. Ct. App. 2006); *see also In Re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *8 (Tenn. Ct. App. March 9, 2004). "Thus, unless a parent asserts that [DCS'] efforts were not reasonable, [DCS] is not required to present additional evidence regarding its remedial efforts." *Id.* However, if a parent disputes the reasonableness of DCS' efforts, DCS may be required to present additional proof regarding its efforts. *Id.* It has been held however, that failure to comply with this statutory requirement, is not fatal as long as DCS presents sufficient, specific evidence to establish the reasonableness of its efforts. *In Re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *8 (Tenn. Ct. App. March 9, 2004); *see also In Re R.L.F.,* 278 S.W.3d 305, 316 (Tenn. Ct. App. 2008)(proceeding with review to determine the reasonableness of DCS' efforts despite the finding that DCS did not file the statutorily

---

[10](...continued)
be construed together, *in pari materia. Frye v. Blue Ridge Neuroscience Ctr.*, 70 S.W.3d 710, 716 (Tenn. 2002). Therefore, the "reasonable efforts" required by Tenn. Code. Ann. § 37-1-166 are the same "reasonable efforts" required by Tenn. Code Ann. § 36-1-113. In further support of this holding, we note that both statutes refer to the other. For a more detailed discussion of this analysis, see *In Re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326, at *8 (Tenn. Ct. App. March 9, 2004).

required affidavit).  In this case, DCS did not file an affidavit.  Therefore, we are required to review the record to determine if DCS presented sufficient evidence to establish the reasonableness of its efforts.

"The success of a parent's remedial efforts generally depends on [DCS'] assistance and support."  *In re Giorgianna H.,* 205 S.W.3d 508, 518 (Tenn. Ct. App. 2006). "Accordingly, the [DCS] employees have an affirmative duty to utilize their education and training to assist parents in a reasonable way to address the conditions that led to the child's removal...." *In re R.L.F.,* 278 S.W.3d at 316.  The duty to exert reasonable efforts exists whether the parent asks for assistance or not.  *Id.*  The efforts made need not be "herculean." *In re Giorgianna H.,* 205 S.W.3d 508, 518 (Tenn. Ct. App. 2006)(citing *In Re C.M.M. & S.D.M.*, No. M2003-01122-COA-R3-PT, 2004 WL 438326 (Tenn. Ct. App. March 9, 2004)). But, DCS must do more than simply provide the parents with a list of services.  *Id.* Reasonable efforts is statutorily defined as "the exercise of reasonable care and diligence by the department to provide services related to meeting the needs of the child and the family." Tenn. Code Ann. § 37-1-166(g)(1).  To determine whether reasonable efforts have been made, the trial court should consider:

1. The reasons for separating the parents from their children,

2. The parents' physical and mental abilities,

3. The resources available to the parents,

4. The parents' efforts to remedy the conditions that required removal of the children,

5. The resources available to the Department,

6. The duration and extent of the parents' efforts to address the problems that caused the children's removal, and

7. The closeness of the fit between the conditions that led to the removal of the children, the requirements of the permanency plan, and [DCS'] efforts.

*In re Giorgianna H.,* 205 S.W.3d 508, 518 (Tenn. Ct. App. 2006).

However, the duty to make reasonable efforts is not a one-way street.  Parents share

the responsibility of addressing the conditions as well. "Thus, parents desiring the return of their children must also make reasonable and appropriate efforts to rehabilitate themselves and to remedy the conditions that required [DCS] to remove their children from their custody." ***Id.*** at 519.

After reviewing the record, we have determined that DCS did exert reasonable efforts to reunify Mother and Arteria H. Vandra Parks, a counselor with Health Connect America, testified that she helped Mother with her employment and housing search, including taking Mother to a drug test in order to obtain a job at Exxon, providing Mother with a list of subsidized housing and career center information, and counseling Mother on how to interview and dress for an interview. Ms. Parks testified that her efforts were hampered because she was not able to locate Mother for much of the time. Andrea Simpson, a counselor with Youth Villages testified that she too assisted Mother in her search for employment and housing. Ms. Simpson testified that she helped Mother fill out job applications, provided Mother with transportation to apply for jobs, allowed Mother to use her cell phone number on Mother's job applications, and took Mother to look at and apply for low-income housing. Youth Villages also provided Mother with a bus card for her use when Ms. Simpson could not provide her with transportation. Cheryl Brewer-Boyle, the case manager for DCS, testified that for a period of time DCS did not contact Mother. However, Ms. Boyle explained that Youth Villages did have contact with Mother and DCS had contracted with Youth Villages to provide services in this case. Ms. Boyle testified that Youth Villages was the primary contact for Mother because she, as the DCS representative, is based out of Fayette County. Ms. Boyle admitted that DCS did nothing to assist Mother with her past due utility bill which Mother asserted was a barrier to her obtaining housing. My Boyle, however, explained that flex funding, which may have been available to pay a portion of the utility bill, was only available once Mother obtained a place to live. According to Ms. Boyle, Ms. Simpson took Mother to a housing complex and to the Department of Human Services to apply for public assistance.

While it appears from the record that DCS' efforts were questionable at the beginning of these proceedings, the efforts did greatly improve and the trial court correctly found that DCS made reasonable efforts to provide Mother with services to remedy the conditions which led to the removal of Arteria H. from her care. While DCS was actively working to assist Mother in obtaining housing and a job, Mother admitted that some days she would just stay in bed and not do anything to remedy her situation. Moreover, often, DCS or Youth Villages would be unable to locate and contact Mother to provide assistance or check on her progress. We recognize that after the trial court continued the hearing to allow DCS and the parents to continue to improve on the situation, Mother worked to make progress on many of the conditions which led to the removal of Arteria H. Mother faithfully attended anger

management classes, and following the May 2009 hearing became drug free from June 2009 through the final hearing. Also, as Ms. Simpson testified, Mother's efforts to obtain a job and housing had been consistent since the trial court's continued the hearing in May 2009. Unfortunately, Mother, even with the additional time granted by the trial court and the additional efforts of DCS and Youth Villages, was not able to remedy all of the conditions which led to the removal of Arteria H. Despite the reasonable efforts by DCS, the evidence reflects that it is unlikely that Mother will be able to remedy the conditions in the near future so that she might provide Arteria H. with a stable and secure environment.

We have no doubt that Mother loves and cares for Arteria H. However, she has been given over two years to remedy the conditions which led to the removal of Arteria H. and has not made satisfactory progress. "A parent's continued inability to provide fundamental care to a child, even if not willful, . . . constitutes a condition which prevents the safe return of the child to the parent's care." *In re A.R*. No. W2008-00558-COA-R3-PT, 2008 WL 4613576, at *20 (Tenn. Ct. App. Oct. 13, 2008)(citing *In re T.S.*, No. M1999-01286-COA-R3-CV, 2000 WL 964775, at *7 (Tenn. Ct. App. July 13, 2000)). "Where, as here, efforts to provide help to improve the parenting abilities, offered over a long period of time, have proved ineffective, the conclusion that there is little likelihood of such improvement as would allow the safe return of the child to the parent in the near future is justified." *Id.* Consequently, we affirm the trial court's finding that grounds for termination of Mother's parental rights to Arteria H. exist as the conditions which led to the removal of the child persist, under Tenn. Code. Ann. § 36-1-113(g)(3).

In order to terminate parental rights, only one of the statutory grounds must be established. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn.2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn.2002). Although Mother has not contested the remaining ground, substantial non-compliance, this Court has reviewed the entire record. We conclude that the evidence does not preponderate against the trial court's finding that, in addition to persistence of conditions, substantial noncompliance was established by clear and convincing evidence. Even had Mother challenged these grounds she could not prevail.

Although Mother does not raise an issue concerning the trial court's finding that termination of her parental rights was in the best interest of the Arteria H., before a court in this State can terminate a biological parent's parental rights, it must find that doing so is in the best interest of the child. *See* Tenn Code Ann. § 36-1-113(c)(2). Consequently, we will review the trial court's findings on the issue of best interest.

Tennessee Code Annotated § 36-1-113(i) provides a list of factors the trial court is to consider when determining if termination is in the child's best interest.[11] However, this list is not exhaustive, and the statute does not require the court to find the existence of every factor before concluding that termination is in a child's best interest. **State v. T.S.W.**, No. M2001-01735-COA-R3-JV, 2002 WL 970434 (Tenn. Ct. App. May 10, 2002). The best interest of a child must be determined from the child's perspective and not the parents. **White v. Moody,** 171 S.W.3d 187, 194 (Tenn. Ct. App. 2004).

We have reviewed the record and we conclude that there is clear and convincing evidence in record to support the trial court's finding that termination of Mother's parental rights is in the best interest of Arteria H. The record shows that Arteria H. has been in the custody of the state since she was four months old. Accordingly, Mother had over two years

---

[11] Tenn. Code Ann. § 36-1-113(i) provides :

> 1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol or controlled substances as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;
> (8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or
>
> (9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

to make adjustments to her life in order to make it safe and in the best interest of Arteria H. to return home. Unfortunately, despite the efforts of DCS, Mother has failed to make adjustments so that she might provide Arteria H. with a safe, secure and stable environment at any point in the near future. It is not in Arteria H.'s best interest to allow her to linger in the uncertain status of foster child, where she has remained since she was four months old, when Mother has been provided adequate time to make necessary adjustments and has failed to do so. Also, testimony at trial indicated that a change in the caretakers of Arteria H. is likely to have a negative effect on the child. We recognize that some of Mother's visitation may have been thwarted by DCS and have considered this in making our determination. However, while Arteria H. was in custody there were two periods of time when Mother did not attempt to contact Arteria H. or DCS over the course of several months. Despite any possible wrongful action of a DCS worker, Mother should have taken the initiative to maintain a relationship with Arteria H. and work to adjust her circumstances to be able to bring Arteria H. back into her home. Unfortunately Mother did not choose to do so. Accordingly, we affirm the finding of the trial court that termination of Mother's parental rights is in the best interest of Arteria H.

### *Father*

The trial court terminated Father's parental rights based upon two statutory grounds: (1) pursuant to Tenn. Code Ann. § 36-1-113(g)(1) and a finding that Father was incarcerated at the time of the institution of this action and that he exhibited wanton disregard for the welfare of Arteria H. for the four months immediately preceding his incarceration; and (2) pursuant to Tenn. Code Ann. § 36-1-113(g)(6) as Father was sentenced to eleven years incarceration and Arteria H. was under the age of eight years at the time he was sentenced. Father does not appeal the finding that grounds for termination of his parental rights exist or that termination of his parental rights is in Arteria H.'s best interest. Instead, Father asserts that his parental rights should not be terminated because DCS did not make reasonable efforts to place Arteria H. with a relative and because of ineffective assistance of counsel in the Juvenile Court proceeding.

After reviewing his brief, it is clear to this Court that all of Father's allegations of error involve the alleged lack of reasonable efforts on the part of DCS or errors which occurred during the dependency and neglect proceeding. However, the two grounds upon which Father's parental rights were terminated, do not require reasonable efforts on the part of DCS or require a previous finding of dependency and neglect. *See e.g., **In re C.A. H.**, No. M2009-00769-COA-R3-PT, 2009 WL 5064953, at *4 (Tenn. Ct. App. Dec. 22, 2009)(holding that DCS did not have to provide reasonable efforts when petitioning to

terminate parental rights based upon the ground of abandonment); *In re G.L.T.*, No. M2008-00582-COA-R3-PT, 2008 WL 3914922, n.6 (Tenn. Ct. App. Aug. 25, 2008)(affirming the termination of a father's parental rights under Tenn. Code Ann. § 36-1-113(g)(6) despite Father's assertion that his rights were violated because DCS did not involve him in the dependency and neglect proceeding or make reasonable efforts to assist him in complying with the permanency plan). Because the grounds did not require such action, any error would not affect the termination of Father's parental rights.

Moreover, this Court has previously held that any deprivation of due process based upon the failure to appoint counsel during a dependency and neglect proceeding is remedied if the appellant is afforded full protection at the termination proceeding. *In re S.Y.*, 121 S.W.3d 358 (Tenn. Ct. App. 358, 364 (Tenn. Ct. App. 2003). Father was represented by appointed counsel during the Juvenile Court proceeding, the termination proceeding and this appeal, and only asserts that his counsel was ineffective during the Juvenile Court proceeding.[12] Father has not raised any issue with the effectiveness of his counsel during the termination proceeding. Even had Father's counsel been ineffective during the dependency and neglect proceeding, any possible due process violation based on ineffectiveness of counsel, was remedied during the termination proceeding.

Further, this Court has previously reviewed the argument that parental rights should not be terminated based upon DCS' failure to place the child with a relative pursuant to Tenn. Code Ann. § 37-2-403 and consistently held that the failure to place the child with a relative is not a basis to defeat termination. *In re Deashon A.C.,* No. E2009-01633-COA-R3-PT, 2010 WL 124155, at *8 (Tenn. Ct. App. March 31, 2010); *In re O.J.B.*, No. W2009-00782-COA-R3-PT, 2009 WL 3570901, at *9 (Tenn. Ct. App. Nov. 2, 2009); *In re K.L.D.R.*, No. M2008-00897-COA-R3-PT, 2009 WL 1138130, at *8 (Tenn. Ct. App. April 27, 2009). In so holding, this Court has explained that Tenn. Code Ann. §37-2-403 is the statute that governs permanency plans for children in foster care and only requires DCS to consider relatives when it is in the child's best interest. *Id.* Consequently, we find no merit to Father's arguments.

While Father has not appealed the trial court's finding that statutory grounds for termination of his parental rights exist nor the trial court's finding that it is in Arteria H.'s best interest to terminate Father's parental rights, because of the importance of these issues,

---

[12]For purposes of this appeal we do not make a determination as to whether there is such a claim as ineffective assistance of counsel at a dependency and neglect proceeding. We merely assume so for purposes of this appeal.

we have considered them. After reviewing the record, we find that there is clear and convincing evidence to support the trial court's finding that grounds to terminate Father's parental rights exist. Also, we find that the record contains clear and convincing evidence to support the determination that termination of Father's parental rights is in Arteria H.'s best interest. Therefore, we affirm the trial court's termination of Father's parental rights.

### *Conclusion*

For the foregoing reasons, we affirm the trial court's termination of both Mother and Father's parental rights. Costs of this appeal are taxed equally to the Appellants, Berthenia H. And Arterio H., for which execution may issue if necessary.

_____

J. STEVEN STAFFORD, JUDGE