IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned On Briefs October 24, 2014

**IN RE: CIDNEY L.**

**Direct Appeal from the Circuit Court for Crockett County**
**No. 3319      Clayburn Peeples, Judge**

---

**No. W2014-00779-COA-R3-PT - Filed November 18, 2014**

---

Mother appeals the trial court's termination of her parental rights. She argues that the trial court erred in holding that clear and convincing evidence established that she engaged in conduct exhibiting a wanton disregard for the welfare of the child prior to her incarceration and that termination was in the child's best interest. We have determined that there is clear and convincing evidence in the record to support both of the trial court's findings. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded**

BRANDON O. GIBSON, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and KENNY ARMSTRONG, J., joined.

Bob C. Hooper, Brownsville, Tennessee, for the appellant, Jessica L.

Robert E. Cooper, Jr., Attorney General and Reporter and Jason Irving Coleman, Assistant Attorney General, for the appellee, State of Tennessee Department of Children's Services.

Jennifer C. Covellis, Jackson, Tennessee, Guardian ad Litem.

**OPINION**

**I. BACKGROUND AND PROCEDURAL HISTORY**

Cidney[1] L. was born to Jessica L. ("Mother") in Jackson, Tennessee.[2] No father is listed on the birth certificate, but a court order later established Michael B. ("Father") as Cidney's biological father. Father is deceased. When Cidney was born, Mother had one daughter from a previous relationship, L.L., born in March 2007.

Prior to October 2011, Mother and her two daughters lived primarily with Mother's sister, though other family members and acquaintances also kept the children from time to time. In October 2011, Mother was arrested in Illinois on federal charges that she persuaded an underage girl to join her in accompanying a male truck driver on a trip to Chicago for the purpose of engaging in prostitution. In April 2012, Mother pled guilty to federal charges of transporting an individual to engage in prostitution and was sentenced to imprisonment for a term of seventy-one months. Mother is currently incarcerated in a federal prison facility in West Virginia and is expected to be released in May 2016.

In November 2011, the Crockett County Juvenile Court declared Cidney and L.L. dependent and neglected and placed them in protective custody with the Department of Children's Services ("DCS"). Since then, L.L. has been placed with her biological father, while Cidney has been placed in several foster homes. For a short time, both girls were placed in the custody of L.L.'s biological father; however, because he was not able to care for both of the girls, Cidney was placed in foster care while L.L. remained in his custody. Next, DCS placed Cidney in the care of Larry H. and Patricia H. ("former foster parents"). However, the former foster parents were not in a position to potentially adopt Cidney, and DCS moved Cidney to the home of Donald B. and Tamara B. ("current foster parents") in August 2013. Cidney has resided with the current foster parents since, and they have shown interest in adopting her.

In January 2013, when Cidney was four years old, DCS filed a petition in Crockett County Circuit Court to terminate Mother's parental rights.[3] Among other things, the petition asserted that statutory grounds for termination existed due to abandonment, Tenn. Code Ann. § 36-1-113(g)(1). DCS also asserted that termination of Mother's parental rights was in Cidney's best interest. A hearing on the termination took place on March 12, 2014. Mother was allowed to testify by phone.

---

[1]Even though the trial court and appellant spell the name of the minor child "Cydne," we use "Cidney" as it appears on the birth certificate.

[2]It is the policy of this Court to use the initials of children and parties involved in termination actions to protect the privacy of the children involved.

[3]The petition also sought termination of Father's parental rights. Because Father passed away on July 13, 2013, the termination of his parental rights is not at issue on appeal.

The trial judge announced his decision at the conclusion of the hearing and entered a written order on May 29, 2014. The judge found by clear and convincing evidence that the statutory ground of abandonment had been established and that termination of Mother's parental rights was in Cidney's best interest. The trial court terminated Mother's parental rights and awarded guardianship of Cidney to DCS.

## II. ISSUES PRESENTED

Mother presents the following issues, which we have slightly reworded, for our review on appeal:

1. Whether the trial court erred in finding that abandonment by wanton disregard was established by clear and convincing evidence.

2. Whether the trial court erred in finding by clear and convincing evidence that termination of Mother's parental rights was in Cidney's best interest.

## III. STANDARD OF REVIEW

"A biological parent's right to the care and custody of his or her child is among the oldest of the judicially recognized liberty interests protected by the due process clauses of the federal and state constitutions." *In re J.C.D.*, 254 S.W.3d 432, 437 (Tenn. Ct. App. 2007); *In re Audrey S.*, 182 S.W.3d 838, 860 (Tenn. Ct. App. 2005). While the parent's right is superior and fundamental to the claims of other persons and the government, it is not absolute. *In re J.C.D.*, 254 S.W.3d at 437. "It continues without interruption only as long as a parent has not relinquished it, abandoned it, or engaged in conduct requiring its limitation or termination." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004).

Termination proceedings in Tennessee are governed by statute. Parties with standing to seek termination of the parental rights of a biological parent must prove two things. First, they must prove the existence of at least one of the statutory grounds for termination.[4] Tenn. Code Ann. § 36-1-113(c)(1) (2014). Second, they must prove that terminating the parental rights of the biological parent is in the child's best interest.[5] Tenn. Code Ann. § 36-1-113(c)(2).

---

[4]The statutory grounds for terminating parental rights are found in Tenn. Code Ann. § 36-1-113(g).

[5]The factors to be considered in determining whether terminating parental rights is in the best interest of the child are found in Tenn. Code Ann. § 36-1-113(i).

Because a decision to terminate parental rights has such profound consequences, a person seeking to terminate the parental rights of a biological parent must prove the statutory elements by clear and convincing evidence. Tenn. Code Ann. § 36-1-113(c)(1); *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010). Applying that heightened burden of proof minimizes the risk of erroneous decisions that result in an unwarranted termination. *Id.* Evidence that satisfies the clear and convincing evidence standard "establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re Audrey S.*, 182 S.W.3d at 861 (citations omitted). It produces a firm belief or conviction in the fact-finder's mind regarding the truth of the facts sought to be established. *In re J.C.D.*, 254 S.W.3d at 437.

The heightened burden of proof required in parental termination cases requires appellate courts to adapt the customary standard of review set forth in Tennessee Rule of Appellate Procedure 13(d). *In re Audrey S.*, 182 S.W.3d at 861. First, we must review the trial court's findings of fact de novo in accordance with Rule 13(d). *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013). The trial court's findings are presumed correct unless the evidence preponderates against them. *Id.* Second, we determine whether the combined weight of the facts, as found by the trial court or as supported by the preponderance of the evidence, provides clear and convincing evidence to support each element of the termination claim. *In re Bernard T.*, 319 S.W.3d at 596. Whether the elements of the termination claim have been proven by clear and convincing evidence is a question of law, which we review de novo with no presumption of correctness. *In re Tiffany B.*, 228 S.W.3d 148, 157 (Tenn. Ct. App. 2007).

## IV. ANALYSIS

### *Abandonment*

"Abandonment" is one of the statutory grounds for terminating parental rights. Tenn. Code Ann. § 36-1-113(g)(1). In terminating Mother's parental rights, the trial court relied on the definition of abandonment found in Tennessee Code Annotated section 36-1-102(1)(A)(iv), which provides:

> A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's

incarceration, *or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.*

(Emphasis added.)

In order to terminate Mother's parental rights based on this section, two distinct requirements must be met. First, Mother must have been incarcerated either on the date that the termination petition was filed or during all or part of the four months immediately preceding its filing. Second, Mother must have either willfully failed to visit, support, or make child support payments for four months preceding her incarceration or must have engaged in conduct prior to her incarceration that exhibits a wanton disregard for the welfare of the child. The inclusion of the second requirement reflects the legislature's appreciation for the gravity of the decision to terminate parental rights. *See In re Audrey S.*, 182 S.W.3d 838, 866 n.37 (Tenn. Ct. App. 2005). Though a parent's decision to engage in conduct that carries a risk of incarceration is itself an indication that the parent may not be fit to care for the child, a statutory scheme in which incarceration is a ground for termination without regard to the length of confinement, the nature of the underlying offense, and the effect of the parent's conduct on the child raises constitutional concerns. *Id.* Accordingly, a parent's incarceration serves only as a triggering mechanism that allows further inquiry into the child's situation to determine whether the behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the child. *Id.* at 866. This Court has "repeatedly held that probation violations, repeated incarceration, criminal behavior, substance abuse, and the failure to provide adequate support or supervision for a child can, alone or in combination, constitute conduct that exhibits a wanton disregard for the welfare of a child." *Id.* at 867–68.

DCS filed the termination petition on January 30, 2013. Mother has been incarcerated since October 2011. Accordingly, the first requirement of Tennessee Code Annotated section 36-1-102(1)(A)(iv) is satisfied.

With regard to the statute's second requirement, the trial court found that Mother's conduct prior to her incarceration exhibited a wanton disregard for the welfare of the child. The trial court stated in its order:

> The mother left the minor child with a family member so she could travel on an 18-wheeler with people she barely knew, one of which was a minor, and engage in prostitution. Further, prior to this date she had left the child with people she didn't really know for days at a time to babysit so she could engage in prostitution, and consume alcohol. Further, she was involved in more than one incident where there was an altercation of disorderly conduct for which

her child was present. All these actions taken together constitute a wanton disregard.

Mother challenges the trial court's finding, arguing that the weight of the evidence does not clearly and convincingly establish that Mother's conduct prior to incarceration exhibited a wanton disregard for Cidney's welfare. We disagree.

Given the nature of the offense underlying Mother's incarceration, the actions that led to Mother's arrest merit strong consideration in this case. Several months prior to October 2011, Mother met a truck driver named Jarrod Sanford. According to her indictment, Mother accompanied Mr. Sanford on trips to several states in September 2011, engaging in prostitution at truck stops along the way. The two planned to travel from Tennessee to Illinois on October 6, 2011. Prior to the trip, the indictment alleges that Mother persuaded an underage girl she met online to join her and Mr. Sanford on the trip for the purpose of engaging in prostitution. Mother met the underage girl at the Wal-Mart in Dyersburg, and Mr. Sanford picked them up there. During the trip, Mother solicited customers for the purpose of prostitution at truck stops in Missouri and Illinois. As a result of her conduct, Mother was charged with and pleaded guilty to transporting an individual to engage in prostitution.[6] During the hearing in this case, Mother invoked her Fifth Amendment right against self-incrimination when she was questioned about the events leading to her arrest and whether she had previously engaged in prostitution. Our hesitancy to return a minor girl to the care of a person who has admittedly persuaded another girl to engage in prostitution cannot be understated. However, because Mother's conviction is not one of the enumerated offenses that independently constitutes statutory grounds for termination, we must continue our inquiry into Mother's conduct prior to incarceration.[7]

---

[6]In exchange for her guilty plea, a second charge against her for conspiracy to transport a minor to engage in prostitution was dropped.

[7]We note, however, that had Mother been convicted of trafficking a person for commercial sex pursuant to Tennessee Code Annotated section 39-13-309, rather than under its federal equivalent, Mother's conviction alone would be grounds for terminating her parental rights without further inquiry into her prior conduct. *See* Tenn. Code Ann. § 36-1-113(g)(12) (providing for termination of parental rights when "[t]he parent or guardian has been convicted of trafficking for commercial sex act under § 39-13-309").

Tenn. Code Ann. § 39-13-309(a)(2) provides: "A person commits the offense of trafficking a person for a commercial sex act who . . . . Recruits, entices, harbors, transports, provides, purchases, or obtains by any other means, another person for the purpose of providing a commercial sex act." The federal statute to which Mother pled guilty is noticeably similar to the Tennessee statute. It provides: "[w]hoever knowingly transports any individual in interstate or foreign commerce...with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title or imprisoned not more than 10 years, or both." 18 U.S.C §

(continued...)

The record reflects that Mother failed to provide adequate care for Cidney prior to her incarceration. In March 2011, Mother left Cidney and L.L. at the home of Chelsey Knutsun, a woman with whom she had no prior relationship, for the majority of a three week period.[8] Ms. Knutsun testified that after she initially agreed to babysit the children for a couple of days, Mother asked Ms. Knutsun if she could stay in the home as well. Though she purported to need a place to stay, Ms. Knutsun testified that Mother was only present about one-third of the time the children were staying in her home. Ms. Knutsun testified that Mother frequently left the home for long periods of time without telling Ms. Knutsun where she was going or how to contact her. Ms. Knutsun testified that in one instance Mother left the girls with her to see a man she met on the internet and ended up being gone for a day and a half. Finally, Ms. Knutsun asked Mother to take the children and leave.

Moreover, the record reflects that Mother engaged in other criminal behavior prior to her incarceration. In October 2009, Mother was charged with assault following an altercation with her landlord. In December 2010, Mother was charged with vandalizing her then-fiance's car. In September 2011, Mother was charged with child abuse and neglect and disorderly conduct arising from an altercation with her sister. Mother is quick to point out in her brief that with the exception of her child abuse and neglect charge, which apparently has not been resolved,[9] each of the charges was dismissed. We note, however, that Mother was questioned about each of the charges during the trial court's hearing and did not deny that she committed any of the alleged offenses. While we realize that these charges are not evidence of conviction beyond a reasonable doubt, they are certainly further evidence of Mother's instability prior to incarceration.

The nature of the offense underlying Mother's incarceration and the evidence of her other conduct prior to incarceration clearly demonstrates a wanton disregard for Cidney's welfare. We therefore find that the record contains clear and convincing evidence to support the trial court's termination of Mother's parental rights on the ground of abandonment pursuant to Tennessee Code Annotated section 36-1-102(1)(A)(iv).

---

[7](...continued)
2421.

[8]At the time, Ms. Knutsun was engaged to the brother of Cidney's biological father. Ms. Knutsun testified that prior to being contacted by Mother to babysit the children, she had never met Mother, and her fiancé had only met Mother once.

[9]Mother testified that she entered a plea deal to have the child abuse and neglect charge dismissed in exchange for completing a parenting class but that she was unable to complete the parenting class before she was incarcerated in October 2011.

***Best Interest***

As explained above, in addition to establishing the existence of at least one ground for terminating parental rights, the petitioner must prove, by clear and convincing evidence, that termination of the parent's rights is in the best interest of the child. *In re Jacobe M.J.*, 434 S.W.3d 565, 572 (Tenn. Ct. App. 2013). Tennessee Code Annotated section 36-1-113(i) provides a list of factors the court should consider when deciding what is in the child's best interest. The list is not exhaustive, however, and the court is not required to find the existence of every factor before concluding that termination is in the child's best interest. *In re Arteria H.*, 326 S.W.3d 167, 182 (Tenn. Ct. App. 2010). Depending on the circumstances of the particular case, the consideration of a single factor or other facts outside the statutory factors may dictate the outcome. *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005). In any event, in weighing the evidence regarding the relevant factors, the court must view the best interest of the child from the child's perspective and not the parent's. *In re Arteria H.*, 326 S.W.3d at 182.

The trial court determined that termination of Mother's parental rights was in Cidney's best interest. Specifically, the court found no meaningful relationship between Mother and Cidney and that continuing the parent/child relationship would diminish Cidney's chances of early integration into a safe and stable permanent home. After reviewing the record, we conclude that there is clear and convincing evidence to support the trial court's finding.

At the hearing, Mother acknowledged that she has not seen Cidney since her arrest in October 2011. Since then, contact between the two has been limited to occasional short phone conversations. Emily Rice, a DCS caseworker assigned to Cidney and L.L., stated during the hearing that she did not believe Cidney had a bond with Mother. Mother is scheduled to remain incarcerated until May 2016. As a requirement of her release from prison, Mother will be required to register as a sex offender, and her contact with unrelated minors will be limited. Accordingly, even after she is released from prison, Mother would not be allowed to have contact with Cidney's friends or classmates except in the presence of a responsible adult who is aware of her background and approved by a probation officer.

Most importantly, however, Cidney has a safe and stable home with the current foster parents, who have indicated a desire to adopt her. Ms. Rice testified that Cidney refers to the current foster parents as "Mama" and "Daddy." Ms. Rice also stated that Cidney seemed comfortable and secure with the current foster parents. Tamara B. stated that she allows Cidney to maintain a relationship with her former foster parents, Larry and Patricia H., whom she testified are like grandparents to Cidney. Given the circumstances, it would be detrimental to Cidney to remove her from the loving, safe, and stable home she has found with Donald and Tamara B.

Mother argues that it is not in Cidney's best interest to terminate her parental rights because it would be detrimental to sever the relationship between Cidney and L.L. We do not discount the bond between Cidney and L.L., but we cannot speculate as to whether L.L. will ever be returned to Mother. Moreover, both Patricia H. and Tamara B. testified that Cidney's interaction with L.L. was no different than it was with other children at church or daycare. In any event, Tamara B. testified that she would allow Cidney to continue to have a relationship with L.L. so long as it did not have an adverse effect on her. Given the totality of the circumstances, we conclude that there is clear and convincing evidence in the record to support the trial court's determination that terminating Mother's parental rights is in Cidney's best interest.

## V. Conclusion

In light of the foregoing, the decision of the trial court is affirmed. The costs of this appeal are taxed to the appellant, Jessica L. Because Jessica L. is proceeding *in forma pauperis* in this appeal, execution may issue for costs if necessary.


_____
BRANDON O. GIBSON, JUDGE