# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
Assigned on Briefs December 6, 2013

## IN RE J.B. JR. ET AL.

### Appeal from the Juvenile Court for Blount County
### No. 21861    William Terry Denton, Judge

### No. E2013-01677-COA-R3-PT-FILED-FEBRUARY 27, 2014

J.B. ("Mother") appeals the termination of her rights to her minor children, J.B. Jr. and J.B. ("the Children").[1] The Department of Children's Services ("DCS") was involved with the family going back to 2006. In 2009, the Children were taken into emergency, protective custody predicated on allegations of illegal drug use, failure to protect from sexual abuse, and domestic violence. The Children were adjudicated dependent and neglected and placed in foster care. A year later, DCS filed a petition to terminate Mother's parental rights. It alleged that Mother abandoned the Children and that she failed to resolve the issues that led to their removal. Following a bench trial, the court found, by clear and convincing evidence, that multiple grounds for termination exist and that termination is in the best interest of the Children. On this appeal, Mother challenges only the best interest determination. We affirm.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court
### Affirmed; Case Remanded

CHARLES D. SUSANO, JR., P.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and JOHN W. MCCLARTY, JJ., joined.

John T. Sholly, Knoxville, Tennessee, for the appellant, J.B.

Robert E. Cooper, Jr., Attorney General and Reporter, and Ryan L. McGehee, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

---

[1]The record indicates that the Children's biological father, J.W.B., voluntarily surrendered his parental rights before the petition to terminate was filed. He is not a party to this appeal.

**OPINION**

**I.**

In 2006, the Children spent two days in the custody of DCS. Father was in jail and Mother lived elsewhere.[2] In May 2009, DCS again took the Children into protective custody after both parents were found to be abusing drugs. In addition, DCS received a report that the Children were being sexually abused by a homeless man whom Father had invited to move in with the family. On the day the Children were removed, Mother left the home before DCS arrived. Later, she fled to her home state of Oregon where she has remained throughout these proceedings. The Children, then ages five and six, were declared dependent and neglected and entered foster care. They were placed together in a pre-adoptive foster home in Dandridge.

On March 8, 2012, DCS filed a petition seeking to terminate Mother's parental rights. The matter came on for trial on June 10, 2013. Mother was not present and her counsel requested a continuance. Counsel asserted that Mother was unable to accomplish the tasks required of her by DCS as a predicate to regaining custody and could not attend the trial because she resided in Oregon and had recently been released to probation in that state. The trial court denied the motion. At the time of trial, the Children had been in foster care for more than four years. Mother had spoken with them by telephone, but had not had physical contact with them since 2009. The Children, then nine and ten, had remained in their same foster home for over four years.

DCS case worker Lisa Hatcher handled the Children's case from the start. She was the only witness to testify at trial. DCS developed an initial permanency plan for the Children in June 2009. It required Mother to address domestic violence, alcohol, and drug issues; provide a safe, stable home for the Children; obtain a legal source of income; resolve pending legal issues; complete a mental health assessment and follow recommendations; and maintain contact with DCS. Shortly after Mother returned to Oregon, she was arrested and went to prison. She was incarcerated from July 2009 through April 2010 before being released on parole. In September 2010, DCS requested a study of Mother's home which was denied because Mother failed to cooperate with the efforts of the Oregon authorities. Mother served several brief stints in the county jail for parole violations and was most recently released in June 2012. She was not incarcerated at any time during the four months prior to the filing of the termination petition. In addition to Ms. Hatcher's testimony, the court received evidence in the form of 36 exhibits. The exhibits largely comprised the case file and

_____

[2]The record suggests that Mother lived in Montana at the time.

included the protective custody order, the permanency plan and its multiple revised forms, and affidavits of reasonable efforts by DCS.

At the close of the proof, the trial court found, by clear and convincing evidence, that grounds for terminating Mother's rights exist. Specifically, the court found that DCS had proven abandonment by willful failure to visit, willful failure to support, and failure to provide a suitable home; persistence of the conditions that brought the Children into state custody; and substantial noncompliance with the terms of the permanency plan. The court concluded that it was "in the best interest of these children that the relationship of parent and child, between [the Children], and their mother . . . , be terminated and the children be made available for adoption." Mother timely filed a notice of appeal.

## II.

Mother presents the following issues for our review as taken verbatim from her brief:

> 1. Were the testimony and exhibits presented at trial sufficient to prove by clear and convincing evidence that the termination of Mother's parental rights is in the best interest of the Children?
>
> 2. Did the trial court explicitly state at trial any specific factors that support its decision that the termination of Mother's parental rights is in the best interest of the Children?
>
> 3. Did the Court's opinion stated at the conclusion of the trial, or the Final Order, indicate that the Court considered such factors?

## III.

With respect to parental termination cases, this Court has observed:

> It is well established that parents have a fundamental right to the care, custody, and control of their children. While parental rights are superior to the claims of other persons and the government, they are not absolute, and they may be terminated upon appropriate statutory grounds. A parent's rights may be terminated only upon "(1) [a] finding by the court by clear and convincing evidence that the grounds for termination of parental

or guardianship rights have been established; and (2) [t]hat termination of the parent's or guardian's rights is in the best interest[] of the child." Both of these elements must be established by clear and convincing evidence. Evidence satisfying the clear and convincing evidence standard establishes that the truth of the facts asserted is highly probable, and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence.

*In re Angelica S.*, E2011-00517-COA-R3-PT, 2011 WL 4553233 at *11-12 (Tenn. Ct. App. E.S., filed Oct. 4, 2011) (citations omitted). On our review, this Court has a duty to determine "whether the trial court's findings, made under a clear and convincing standard, are supported by a preponderance of the evidence." *In re F.R.R., III*, 193 S.W.3d 528, 530 (Tenn. 2006). The trial court's findings of fact are reviewed de novo upon the record accompanied by a presumption of correctness unless the preponderance of the evidence is against those findings. *Id*.; Tenn. R. App. P. 13(d). Great weight is accorded the trial court's determinations of witness credibility, which court findings will not be disturbed absent clear and convincing evidence to the contrary. *See Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002). Questions of law are reviewed de novo with no presumption of correctness. *Langschmidt v. Langschmidt*, 81 S.W.3d 741 (Tenn. 2002).

IV.

Taken together, the issues raised by Mother essentially challenge the sufficiency of the evidence relied upon by the court to support its termination order. She asserts that the limited testimony and exhibits at trial do not rise to the required level of "clear and convincing" evidence. In a related argument, Mother contends that the termination order cannot stand because the trial court made no findings, explicit or implicit, to indicate that it even considered, much less applied, the statutory "best interest" factors in making its ruling.

Again, we are mindful that, before terminating a parent's rights, a court must determine that two things have been clearly and convincingly proven – "not only that statutory grounds exist but also that termination is in the child's best interest." *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)(citing Tenn. Code Ann. § 36-1-113(c)). As we have already noted, Mother does not dispute that grounds for termination were established. Nevertheless, we have considered the evidence pertaining to grounds for termination. We hold that the evidence does not preponderate against the trial court's findings, said to be made by clear and convincing evidence, of multiple grounds for abandonment. *See In re Arteria H*., 326 S.W.3d 167, 184 (Tenn. Ct. App. 2010).

In considering the issue of "best interest," we are guided by the following statutory factors set forth in Tenn. Code Ann. § 36-1-113(i)(Supp. 2013). That section provides:

> In determining whether termination of parental or guardianship rights is in the best interest of the child pursuant to this part, the court shall consider, but is not limited to, the following:
>
> (1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;
>
> (2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;
>
> (3) Whether the parent or guardian has maintained regular visitation or other contact with the child;
>
> (4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;
>
> (5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;
>
> (6) Whether the parent or guardian, or other person residing with the parent or guardian, has shown brutality, physical, sexual, emotional or psychological abuse, or neglect toward the child, or another child or adult in the family or household;
>
> (7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parent's or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to § 36-5-101.

"The above list is not exhaustive and there is no requirement that all of the factors must be present before a trial court can determine that termination of parental rights is in a child's best interest." **State Dep't of Children's Servs. v. B.J.N.**, 242 S.W.3d 491, 502 (Tenn. Ct. App. 2007) (citing **Dep't of Children's Servs. v. P.M.T.**, No. E2006-00057-COA-R3-PT, 2006 WL 2644373, at *9 (Tenn. Ct. App. Sept. 15, 2006)).

Mother points out, correctly, that the trial court did not identify the specific statutory factors relied upon by the court as support for the proposition that termination is in the best interest of the Children. Our review of the record, however, leads us to conclude that, en route to its decision, the court properly considered the evidence in light of the applicable factors. In its termination order, the trial court set forth the following "findings of fact":

> FSW[3] Hatcher testified that [Mother] completed two alcohol and drug assessments during this case and was recommended to complete an intensive outpatient drug rehabilitation program. [Mother] was in prison in Oregon for a time period and enrolled in such a program through the prison, however, voluntarily left . . . prior to completion and to date has failed to complete an intensive outpatient drug rehabilitation program. FSW Hatcher testified that [Mother] also completed two mental health assessments during this case which recommended that she receive[] mental health counseling. [Mother] never complied with the counseling recommendation and she never completed the domestic violence classes or the non-offender classes. [Mother] was in and out of jail and/or prison in Oregon during the majority of this case. FSW Hatcher testified that she made numerous efforts to assist [Mother] in completing her permanency plan . . . . Sometime in the summer of 2012

---

[3]"Family Service Worker."

[Mother] was charged with a violation of probation resulting from a failed drug screen.

FSW Hatcher testified that shortly after [Mother] moved to Oregon in 2009 she was arrested and remained incarcerated until April 2010 when she was released on parole. FSW Hatcher requested a home study of [Mother's] home in September 2010 . . . . The State of Oregon denied the placement request citing [Mother's] failure to cooperate [that] prevented them from completing the home study.

FSW Hatcher testified that [Mother] has not visited the children . . . since they came into DCS custody in May 2009. Shortly after the children were removed into DCS custody [Mother] fled to . . . Oregon and has remained there since that time.

(Footnote added.)

In specifically addressing the question of the Children's best interest, the trial court further stated:

DCS must also prove that it is in the best interest of the children for [Mother's] rights to be terminated. The non-exhaustive list of factors that the court may consider are codified in T.C.A. § 36-1-113(i). The Court finds that mother has failed to demonstrate any interest or skill in parenting [the] children. The children have been cared for by the current foster parents since their removal in 2009 and a change of caretakers and physical environment would likely inflict the same trauma as the removal of [ ] children from a biological family. The foster parents want to adopt the children.

Finally, mother has failed to show any concern for these children at any time during the children's stay in state's custody, including appearing for the trial. . . . The court specifically finds by clear and convincing evidence that it is in the best interest of [the Children] for their mother's parental rights to be terminated.

The evidence does not preponderate against the trial court's findings. Most significantly, the evidence does not preponderate against the trial court's determination that

-7-

there is clear and convincing evidence that the Children's interest is best served by permanently severing Mother's ties to them. In summary, the proof supports the trial court's overall assessment that Mother failed to show any real interest in or concern for the Children throughout this entire case. In the four years since they were placed in the custody of DCS and foster care, Mother did not once visit or provide child support. She made no meaningful progress toward completing the steps necessary to regain custody. In all that time, Mother failed to obtain recommended treatment for her drug problem. This failure to act indicates that she has made no lasting change to her circumstances or conditions. Even after the petition was pending, Mother's drug use continued, indicating that no change in this regard was imminent. Further, Mother did not cooperate with Oregon authorities so that a home study could be made as part of DCS's effort to assess and assist Mother's ability to properly parent the Children and provide them with a safe, suitable place to live. Throughout these proceedings, Mother was in another state while the Children lingered in the uncertainty of foster care.

## C.

Lastly, we address the *sufficiency* of the trial court's findings in support of its best interest determination. It is clear to us that, as often occurs in parental termination cases, the trial court's findings regarding the existence of grounds for termination overlap with its best interest determination. Stated differently, much of the evidence and findings establishing grounds for termination also apply to the court's consideration of the Children's best interest. Thus, for example, in support of its finding of persistence of conditions, the trial court found that Mother was abusing drugs at the time of the Children's removal, had not obtained treatment for her drug problem since the Children's removal, and continued to abuse drugs, as evidenced by a probation violation for a failed drug screen as recently as 2012. These same findings, in our view, are relevant to a consideration of certain statutory best interest factors, to wit: (1) "whether the parent . . . has made such an adjustment of circumstance, conduct, or conditions as to make it safe" for the child to be in the parent's home; (2) "whether the parent . . . has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not appear reasonably possible"; and (3) ". . . whether there is such use of alcohol or controlled substances as may render the parent . . . consistently unable to care for the child in a safe and stable manner." *See* Tenn. Code Ann. § 36-1-113(i)(1), (2) and (7). Similarly, we conclude that the court's finding that Mother abandoned the Children by her failure to visit and support them for over four years is relevant to those best interest factors that consider (1) "whether the parent . . . has maintained regular visitation or other contact with the child"; (2) "whether a meaningful relationship has otherwise been established between the parent . . . and the child"; and (3) "whether the parent . . . has paid child support . . . ." *See* Tenn. Code Ann. § 36-1-113 (3), (4), and (9).

In summary, the trial court explicitly referenced the statutory best interest factors in its termination order. Its factual findings indicate that it considered the evidence in light of these relevant factors, among other considerations, in concluding that termination of Mother's rights best serves the Children's interest. Perhaps most significantly, the trial court observed that Mother fled the state without knowing what would become of the Children and never returned. Viewing the best interest issue from the Children's perspective, as we must, we conclude that this fact alone weighs in favor of terminating Mother's rights and allowing the Children an opportunity to achieve permanency in their lives. We reject Mother's arguments to the contrary.

V.

The judgment of the trial court terminating Mother's parental rights is affirmed. Costs on appeal are taxed to the appellant, J.B. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the trial court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., PRESIDING JUDGE