IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs August 2, 2016

**IN RE JAIDEN C.**

**Appeal from the Chancery Court for Union County**
**No. 6556      Elizabeth C. Asbury, Chancellor**

_____

**No. E2016-00366-COA-R3-PT-FILED-AUGUST 18, 2016**

_____

This is a termination of parental rights and adoption case. Appellant, the minor child's paternal grandmother, appeals the trial court's denial of her petition to terminate Appellee/Mother's parental rights on grounds of abandonment by willful failure to visit and persistence of the conditions that led to the child's removal from Appellee's home. Specifically, the trial court held that Appellant had failed to meet her burden of proof to show, by clear and convincing evidence, either that Appellee's failure to visit the child was willful, or that the conditions that precipitated the child's removal persisted. Discerning no error, we affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which ANDY D. BENNETT, and THOMAS R. FRIERSON, II, JJ., joined.

Lisa A. White, Knoxville, Tennessee, for the appellant, Connie M.

Jennifer H., Maynardville, Tennessee, Pro Se.

**OPINION**
**I. Background**

The child at issue in this case, Jaiden C., was born, out of wedlock, in October of 2006.[1] The child's mother is Appellee Jennifer H. The child is currently in the custody of

_____

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

her paternal grandmother, Appellant Connie M.[2]  The order placing custody with Connie M. was entered on July 7, 2011 in the Juvenile Court for Knox County.  The July 7, 2011 order provides, in pertinent part, as follows:

> The Court finds clear and convincing evidence of dependency and neglect pursuant to T.C.A. § 37-1-102(b)(12) based upon the Mother's failure to protect the child from physical abuse inflicted by her boyfriend, [Wayne G.], her failure to provide proper care and supervision for the child, and her failure to provide safe and appropriate housing for the child. The Court also finds clear and convincing evidence that [Wayne G.] poses a risk of substantial harm to the child if allowed future contact. Additionally, the Court finds that . . . it is in the best interest of the child . . . that the Paternal Grandparents [be awarded custody] . . . .

Under the July 7, 2011 order, Jennifer H. was granted visitation with Jaiden; however, the order states that Appellee's "contact with the child shall be limited to strictly supervised visitation only at Parent Place, according to the rules and requirements of that organization." (emphasis in original).  The order further states that "the Paternal Grandparents shall be responsible for making the child available for visitation as arranged by Parent Place . . . ."

On December 12, 2013, Connie M. filed a petition to terminate Jennifer H.'s parental rights and to adopt Jaiden.[3]  As grounds for termination of Jennifer H.'s parental rights, Connie M. averred abandonment by willful failure to visit, Tenn. Code Ann §36-1-113(g)(1), as defined in Tennessee Code Annotated Sections 36-1-102(1)(A)(i), and persistence of the conditions that led to the child's removal from Appellee's custody, Tenn. Code Ann. §36-1-113(g)(3).

By order of February 25, 2014, Appellee was declared indigent, and an attorney was appointed to represent her.  Thereafter, on May 23, 2014, Appellee filed an answer to the petition to terminate her parental rights, wherein she denied the material allegations set out in the petition.  By order of June 5, 2014, a guardian ad litem was appointed for Jaiden.

The petition to terminate parental rights was heard on November 17, 2015.  By order of December 8, 2015, the trial court denied Appellant's petition and found, in relevant part, as follows:

---

[2] Custody was originally awarded to Connie M. and her husband, Stanley M.; Stanley M. died during the course of these proceedings.

[3] Connie M. testified that her son, the child's father, is currently incarcerated.  When asked why Connie M. did not seek to terminate her son's parental rights, she stated that he had orally agreed not to contest her adoption of Jaiden.  Regardless, the child's father's parental rights are not the subject of this case, and he is not a party to this appeal.

[Connie M.] had the burden of proving by clear and convincing evidence first that mother had willfully failed to visit during the four-month period prior to the filing of the December 6, 2013 petition. The proof was that in fact no visits occurred during that time period. That was acknowledged by the grandmother and the mother. So, the focus of the Court has to be on the statutory word, "willfulness."

The Knox County Juvenile Court order [of July 7, 2011, *supra*] . . . says: "The paternal grandparent shall be responsible for making the child available for visitation as arranged by Parent Place."

The proof was story A from mom and story Z from grandmother, and there wasn't anything presented to the Court to either refute mom or corroborate grandma. So it is really hard for the Court to say that mother has willfully failed to visit when the mother was saying that she was waiting for Parent Place to call her and the court order saying that the grandparents were the ones responsible for making the child available for visitation as arranged by Parent Place.

The second issue is persistence of conditions. Now the same court order [i.e., July 7, 2011] . . . does say that mom failed to protect Jaiden from physical abuse as inflicted by the boyfriend. . . . The proof is . . . clear that she had no contact with that man since August of 2013 except for a brief time at Christmas when she took the . . . children to get . . . Christmas presents. . .

\*\*\*

So therefore the Court has to conclude that [Connie M.] has failed to prove by clear and convincing evidence the continuing persistence of condition.

## II. Issues

Connie M. appeals. She raises three issues for review as stated in her brief:

1. Whether the trial court erred in finding that the Mother did not abandon the minor child when she willfully failed to visit.
2. Whether the trial court erred in finding there was no persistence of the Mother's conditions that led to [the] Child's removal.
3. Whether the trial court erred in failing to rule on whether it is in the best interest of the Child to terminate the parental rights of the Mother.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash–Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the children's best interest. Tenn. Code Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the children's best interests must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable . . . and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id*. at 653.

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is *de novo* with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Analysis
### A. Abandonment by Willful Failure to Visit

Tennessee Code Annotated Section 36-1-113(g)(1) provides that termination of parental rights may be based on the ground of "[a]bandonment by the parent or guardian, as defined in Section 36-1-102...." Tennessee Code Annotated Section 36-1-102(1)(A)(i) defines abandonment, in relevant part, as follows:

(i) For a period of four (4) consecutive months immediately preceding the filing of a proceeding or pleading to terminate the parental rights of the parent or parents or a guardian or guardians of the child who is the subject of the petition for termination of parental rights or adoption, that a parent or parents or a guardian or guardians either have willfully failed to visit or have willfully failed to support or have willfully failed to make reasonable payments toward the support of the child.

As noted in the trial court's order, *supra,* the parties do not dispute that Appellee did not, in fact, visit Jaiden during the four months immediately preceding the filing of the petition to terminate her parental rights. However, the trial court specifically found that Appellee's failure to visit was not willful. Failure to visit or support a child is "willful" when a person is aware of his or her duty to visit or support, has the capacity to do so, makes no attempt to do so, and has no justifiable excuse for not doing so. *In re Audrey S.*, 182 S.W.3d 838, 864 (Tenn. Ct. App. 2005), *perm. app. denied* (Tenn. Nov. 7, 2005). Willfulness depends on the actor's intent, and intent is seldom capable of direct proof. *Id*. Therefore, the trier-of-fact must infer intent from the circumstantial evidence, including a person's actions or conduct. *Id*. "Whether a parent failed to visit or support their child is a question of fact. Whether a parent's failure to visit or support constitutes willful abandonment, however, is a question of law." *In re Adoption of Angela E.*, 402 S.W.3d 636, 649 (Tenn. Ct. App. 2013) (citing *In re Adoption of A.M.H.*, 215 S.W.3d 793, 810 (Tenn. 2007)).

As set out in the juvenile court's July 7, 2011 order, Appellee's visitation with Jaiden was to be supervised by Parent Place, and Appellant was to be responsible for making the child available for visitation as arranged by Parent Place. Turning to the record, Jennifer H. testified that "from 2011 to 2012," she exercised regular visitation at Parent Place. However, she stated that her visits were "canceled" when Stanley M. became ill:

Q. And how many times did you [visit]?

A. I believe [I] visited from 2011 to 2012.

Q. And then what happened?

A. And then my visits were canceled.

***

Q. Why did you cancel them . . .

A. I did not cancel them . . . [I]n 2012, when [Stanley M.] was sick . . . he was undergoing chemotherapy  . . . on Saturdays, when the visits were . . . and

- 5 -

[Connie M.] needed them changed again. And I couldn't do that at that present moment.

Q. Why not?

A. I had a job.

Appellee explained that her visitation was originally scheduled on Thursday, but then the visits were changed to Saturday. Although Appellee stated that her manager was fine with the change to Saturday, when Connie M. requested visits be moved to Tuesday, Jennifer H.'s manager would not give her the time off. Nonetheless, Appellee stated that, "I was talking to Mandy at Parenting Place and I was letting her know that I couldn't [visit on Tuesdays]." Jennifer H. continued:

> I called Parent Place and I had my [phone] number changed and I had told [Parent Place that] if Connie was okay with the visits again, here is my new number. And it never went anywhere. . . . I didn't hear from them. . . . I thought it was up to Parent Place [to arrange visits]. . . . I felt that they were [supposed] to call me, because I had give [sic] them my new number. And whenever Connie was okay with the visits again that we could go from there.

Connie M.'s testimony largely corroborates Jennifer H.'s:

Q [to Connie M.]: Okay. There has been a lot of discussion about visitation that was occurring . . . before March 2012. Was Jennifer . . . visiting Jaiden before March 2012?

A. Yes, I think so, at Parent Place.

Q. Okay. And did you request a change from Parent Place?

A. Yes, I did. I requested two . . . . I asked for the first date and Mandy said she just didn't know. Then I asked for another day and Mandy just told me she just said no. . . .

*** 

Q. So, the visits, according to [Jennifer H.], were on Saturday at that time?

A. Yes, ma'am

Q. And did you—would you clarify, you were asking to change those to a

different day of the week?

A. Yes. . . . I did not want Jenn to miss her visits, but when I talked to Mandy, she said Jennifer just said no on both days, and she wouldn't . . . work with me on the days.

\*\*\*

Q. Okay. So, at any time between 2012 and 2014, did you receive any communication from Parent Place about restarting visitation?

A. No.

\*\*\*

Q. And were the visits stopped by Parent Place.

A. Yes.

\*\*\*

Q. But you never called the Parent Place and said . . . I can visit any day now?

A. That is correct . . . .

Under the circumstances, we concede that Jennifer H. should have taken a more active role in ensuring her visits with Jaiden. However, from the foregoing testimony and the totality of the circumstances, it is apparent that both Connie M. and Parent Place had some role in dropping the proverbial ball concerning the ordered visitation. This is especially so in light of the plain language of the juvenile court's July 7, 2011 order, which places some burden on Connie M. to provide the child for visits, and places some burden on Parent Place to ensure that visitation comports with its internal policies. From the record as a whole, we agree with the trial court that the evidence does not clearly and convincingly support a finding that Appellee's failure to visit was willful in this case.

## B. Persistence of the Conditions that Led to the Child's Removal

Tennessee Code Annotated Section 36-1-113(g)(3) provides that termination of parental rights may be based upon persistence of conditions. Persistence of conditions is defined as:

(3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months:

- 7 -

(A)     The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

(B)     There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

(C)   The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." **In re Arteria H.**, 326 S.W.3d 167, 178 (Tenn.Ct.App.2010), overruled on other grounds by **In re Kaliyah S.**, 455 S.W.3d 533 (Tenn.2015).

In **In re Audrey S.**, this Court held that, "based on the statutory text and its historical development, [the ground of persistence of conditions found in Tennessee Code Annotated Section 36-1-113(g)(3)] applies as a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse." **In re Audrey S.**, 182 S.W.3d at 872. As set out in the juvenile court's July 7, 2011 order, *supra*, the finding of dependency and neglect in this case was based on "the Mother's failure to protect the child from physical abuse inflicted by her boyfriend, [Wayne G.], her failure to provide proper care and supervision for the child, and her failure to provide safe and appropriate housing for the child." Turning to the record, Appellee testified that she has had no significant contact with Wayne G. since 2013:

Q. And you chose to stop seeing [Wayne G.] in, obviously, 2013, was it

Christmas?

A. In August.

***

Q.  . . . [Y]ou stated that you, since [August of] 2013, you have not seen Wayne [G.]?

- 8 -

A. There has been no communication . . . . I had said that I had seen him, but I would dodge and go the other way.

From our review, there is no countervailing evidence in the record to dispute Appellee's testimony that she has not had contact with Wayne G. since 2013.

Concerning Appellee's housing, the record indicates that, since the child was removed from her custody in 2011, Jennifer H. has moved approximately five times. However, at the hearing on the petition to terminate her parental rights, Appellee testified that she is currently living in a two-bedroom apartment with two of her children. In addition, Appellee testified that she is currently employed and that she earns sufficient income to maintain her housing and to provide daycare for the two other children.

From the totality of the circumstances, we agree with the trial court's conclusion that the evidence does not clearly and convincingly support termination of Appellee's parental rights on the ground of persistence of the conditions that led to Jaiden's removal from her custody. Having determined that neither ground for termination of Appellee's parental rights was proven by clear and convincing evidence, we pretermit discussion of whether termination of Appellee's parental rights is in Jaiden's best interest. Tenn. Code Ann. § 36-1-113(c) (stating that a person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the children's best interest).

## IV. Conclusion

For the foregoing reasons, we affirm the order of the trial court. The case is remanded to the trial court for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Connie M., and her surety, for all of which execution may issue if necessary.

_____
KENNY ARMSTRONG, JUDGE