IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 1, 2017

## IN RE NEVAEH B.

Appeal from the Juvenile Court for Chester County
No. 2015-JV-1323   Van McMahan, Judge

_____

### No. W2016-01769-COA-R3-PT

_____

This is a termination of parental rights case.  The trial court terminated Mother/Appellant's parental rights on the grounds of: (1) abandonment by an incarcerated parent for willful failure to visit, willful failure to support, and wanton disregard; (2) failure to substantially comply with the requirements of the permanency plan; and (3) persistence of the conditions that led to the Child's removal.  The trial court also found, by clear and convincing evidence, that termination of Appellant's parental rights is in the child's best interest.  Because the proof is not sufficient to establish that the child was removed from Appellant's home, we reverse the ground of persistence of conditions.  The trial court's order is otherwise affirmed.

**On Remand from the Supreme Court; Judgment of the Juvenile Court
Reversed in Part, Affirmed in Part, and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

William Johnson Milam, Jackson, Tennessee, for the appellant, Makayla B.

Lanis L. Karnes, Jackson, Tennessee, for the appellees, James G. and Missy G.

## OPINION

### I. Background

This termination of parental rights case is on remand from the Tennessee Supreme Court for consideration on the merits.  In our initial review of the case, we determined that this Court lacked subject-matter jurisdiction over the appeal based on Appellant/Mother's failure to sign the notice of appeal.  In its recent decision, ***In re Bentley D.***, No. E2016-02299-SC-RDO-PT, 2017 WL 5623577 (Tenn. Nov. 22, 2017),

the Tennessee Supreme Court held that the signature requirement contained in Tennessee Code Annotated Section 36-1-124(d), requiring the appellant to sign the notice of appeal, was satisfied by the appellant's attorney's signature on the notice of appeal. Here, appellant did not sign the notice of appeal; however, her attorney did. As such, under the holding in **In re Bentley D.**, this Court has jurisdiction to adjudicate the appeal on its merits. We now turn to that task.

In March of 2013, Nevaeh B. was born to Appellant Makayla B. ("Mother").[1] On January 8, 2014, the Tennessee Department of Children's Services ("DCS") received a referral that Nevaeh, who was nine months old at the time, had been exposed to drugs. Specifically, DCS was contacted after Mother tested positive for methamphetamine and cocaine. On January 10, 2014, DCS filed a petition for adjudication of dependency and neglect in the Juvenile Court of Chester County. As grounds for its petition, DCS averred that the Child was: (1) without a parent, guardian or legal custodian, Tenn. Code Ann. § 37-1-102(b)(12)(A); (2) in such a condition of want or suffering or [was] under such improper guardianship or control as to injure or endanger the morals or health of the [child], Tenn. Code Ann. § 37-1-102(b)(12)(F); and (3) suffering from abuse or neglect, Tenn. Code Ann. § 37-1-102(b)(12)(G). DCS further averred that Mother "has a reported history of drug use, including methamphetamine and cocaine. [Mother's] whereabouts are currently unknown." DCS noted that, at the time of removal and "during [DCS's] investigation," the child "was at the home of the maternal grandparents." Custody was initially awarded to the Child's maternal grandparents. On January 13, 2014, the juvenile court appointed an attorney for Mother and a guardian ad litem for the Child. By order of March 4, 2014, the juvenile court granted custody to the Child's paternal aunt and uncle, James and Missy G. (together, "Appellees"). The Child has remained with Appellees since that time.

By order of July 3, 2014, the juvenile court adjudicated the Child to be dependent and neglected. The court noted that Mother "stipulate[s] that the Child is dependent and neglected and stipulate[s] that the court may adopt the facts of the petition as its findings of fact." On September 4, 2014, the juvenile court granted Mother supervised visitation, to-wit:

> Visitation for the mother is to be supervised by Kelly [C., James G.'s sister] . . . . The visits should be two hours a week, on the same day each week and same time, unless mutually agreed upon by the parties with twenty-four (24) hour advance notice. . . . If mother is ten (10) minutes late without communicating in advance or good cause, the supervisor will leave with the child (Not having transportation is not good cause since Mother will know when her visitation is every week). . . . If mother misses three (3) visits in a

---

[1] In cases involving minor children, it is the policy of this Court to redact the parties' names so as to protect their identities.

row without communicating or without good cause, the visits will stop completely until she returns to court for the Judge to review the situation.

The juvenile court's order further provided that Mother could petition for an increase or change in visitation/custody once she had: (1) resolved all criminal charges; (2) completed parenting classes; (3) procured stable housing and employment; and (4) shown proof of a negative hair/nail follicle drug screen.

On March 10, 2014, Mother participated in a Child and Family Team Meeting with DCS. Thereafter, on June 11, 2014, DCS and Mother entered into a permanency plan for the Child. Mother's requirements, under the plan, were to: (1) provide a safe, stable, and drug-free home environment; (2) participate in alcohol and drug assessment and follow all recommendations thereof; (3) submit to random drug tests; (4) resolve all legal issues and follow all rules of probation; (5) participate in parenting classes and anger management classes.

From the record, Mother's criminal history dates back to at least August of 2013. As is relevant to this appeal, on May 18, 2014, Mother was arrested for theft under $500. On or about September 25, 2014, while the May 18, 2014 charges were pending, Mother was arrested for violation of her parole and was incarcerated until March of 2015. While she was incarcerated, on January 14, 2015, Mother was convicted of the May 18, 2014 theft charge and was sentenced to 11 months and 29 days. Mother was placed on probation and did not initially serve jail time for that conviction. However, on August 21, 2015, Mother's probation officer conducted a random drug screen, and Mother tested positive for methamphetamine. On August 26, 2015, her parole was revoked and a warrant was issued for her arrest.

Following Mother's January 14, 2015 conviction, Appellees filed a petition to terminate Appellant's parental rights on February 17, 2015. As grounds for termination of Mother's parental rights, Appellees alleged: (1) abandonment by willful failure to visit or support, Tenn. Code Ann. §§ 36-1-113(g)(1) and 36-1-102(1)(a)(i); (2) substantial noncompliance with the requirements of the permanency plan, Tenn. Code Ann. § 36-1-113(g)(2); and (3) persistence of the conditions that led to the Child's removal from Mother's custody, Tenn. Code Ann. § 36-1-113(g)(3). Appellant filed her answer on April 21, 2015, wherein she denied the material allegations made in the petition.

The hearing on the petition to terminate Mother's parental rights was scheduled for August 27, 2015. However, Mother failed to appear. Mother's August 26, 2015 warrant, discussed *supra*, had been issued the previous day. In her testimony, Mother stated that, when she learned that there was an outstanding warrant for her arrest, she chose not to attend the hearing on the termination of her parental rights, fearing that she would be arrested. On December 25, 2015, Mother was arrested on the outstanding warrant and taken into custody.

- 3 -

The petition to terminate Mother's parental rights was heard on March 9, 2016. Although Mother was incarcerated at that time, she attended the hearing and testified. By order of July 15, 2016, the trial court terminated Appellant's parental rights on the grounds of: (1) abandonment by an incarcerated parent for willful failure to visit, willful failure to support, and wanton disregard; (2) failure to substantially comply with the requirements of the permanency plan; and (3) persistence of the conditions that led to the Child's removal. The trial court also found, by clear and convincing evidence, that termination of Mother's parental rights is in the Child's best interest. Mother appeals

## II. Issues

Mother raises two issues for review as stated in her brief:

1.  Whether the Appellant . . . abandoned the child pursuant to T.C.A. § 36-1-113(g)(1) and § 36-1-102(a)(1).

2.  Whether the court's termination of Appellant's parental rights is in the best interest of the child.

As set out in her statement of the issues, Mother appeals only the ground of abandonment. However, as noted above, the trial court relied on three grounds: (1) abandonment, (2) failure to substantially comply with the permanency plan, and (3) persistence of conditions. Although only one ground must be proven by clear and convincing evidence in order to terminate a parent's rights, the Tennessee Supreme Court has instructed this Court to review every ground relied upon by the trial court to terminate parental rights in order to prevent "unnecessary remands of cases." *In re Angela E.*, 303 S.W.3d 240, 251 n.14 (Tenn. 2010). Accordingly, we will review all of the foregoing grounds.

## III. Standard of Review

Under both the United States and Tennessee Constitutions, a parent has a fundamental right to the care, custody, and control of his or her child. *Stanley v. Illinois*, 405 U.S. 645, 651 (1972); *Nash-Putnam v. McCloud*, 921 S.W.2d 170, 174 (Tenn. 1996). Thus, the state may interfere with parental rights only when a compelling interest exists. *Nash-Putnam*, 921 S.W.2d at 174-75 (citing *Santosky v. Kramer*, 455 U.S. 745 (1982)). Our termination statutes identify "those situations in which the state's interest in the welfare of a child justifies interference with a parent's constitutional rights by setting forth grounds on which termination proceedings can be brought." *In re W.B.*, Nos. M2004-00999-COA-R3-PT, M2004-01572-COA-R3-PT, 2005 WL 1021618, at *7 (Tenn. Ct. App. Apr. 29, 2005) (citing Tenn. Code Ann. § 36-1-113(g)). A person seeking to terminate parental rights must prove both the existence of one of the statutory grounds for termination and that termination is in the child's best interest. Tenn. Code

Ann. § 36-1-113(c); *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003); *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002).

Because of the fundamental nature of the parent's rights and the grave consequences of the termination of those rights, courts must require a higher standard of proof in deciding termination cases. *Santosky*, 455 U.S. at 769. Accordingly, both the grounds for termination and that termination of parental rights is in the child's best interest must be established by clear and convincing evidence. Tenn. Code Ann. § 36-3-113(c)(1); *In re Valentine*, 79 S.W.3d at 546. Clear and convincing evidence "establishes that the truth of the facts asserted is highly probable ... and eliminates any serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *In re M.J.B.*, 140 S.W.3d 643, 653 (Tenn. Ct. App. 2004), *perm. app. denied* (Tenn. July 12, 2004). Such evidence "produces in a fact-finder's mind a firm belief or conviction regarding the truth of the facts sought to be established." *Id.*

In light of the heightened standard of proof in termination of parental rights cases, a reviewing court must modify the customary standard of review in Tennessee Rule of Appellate Procedure 13(d). As to the trial court's findings of fact, our review is de novo with a presumption of correctness unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d). We must then determine whether the facts, as found by the trial court or as supported by the preponderance of the evidence, clearly and convincingly establish the elements necessary to terminate parental rights. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

## IV. Grounds for Termination of Parental Rights

### A. Abandonment

The trial court found, by clear and convincing evidence, that Mother's parental rights should be terminated on the ground of abandonment by willful failure to visit and willful failure to support. In pertinent part, Tennessee Code Annotated Section 36-1-113(g) provides:

> (g) Initiation of termination of parental or guardianship rights may be based upon any of the grounds listed in this subsection (g). The following grounds are cumulative and non-exclusive, so that listing conditions, acts or omissions in one ground does not prevent them from coming within another ground:
>
> (1) Abandonment by the parent or guardian, as defined in § 36-1-102, has occurred[.]

Tenn. Code Ann. § 36-1-113(g)(1). As noted above, Mother was incarcerated from

approximately September 25, 2014 until March of 2015; the petition to terminate her parental rights was filed on February 17, 2015. Tennessee Code Annotated Section 36-1-102(1)(A) defines "abandonment," in relevant part, as follows:

> (1)(A) For purposes of terminating the parental or guardian rights of a parent or parents or a guardian or guardians of a child to that child in order to make that child available for adoption, "abandonment" means that:
>
> ***
>
> (iv) A parent or guardian is incarcerated at the time of the institution of an action or proceeding to declare a child to be an abandoned child, or the parent or guardian has been incarcerated during all or part of the four (4) months immediately preceding the institution of such action or proceeding, and either has willfully failed to visit or has willfully failed to support or has willfully failed to make reasonable payments toward the support of the child for four (4) consecutive months immediately preceding such parent's or guardian's incarceration, or the parent or guardian has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child.

Tenn. Code Ann. § 36-1-102(1)(A)(iv). Accordingly, the relevant time period in this case is from May 25, 2014 until September 25, 2014.

In *In re Audrey S.*, this Court discussed willfulness in the context of termination of parental rights cases:

> The concept of "willfulness" is at the core of the statutory definition of abandonment. A parent cannot be found to have abandoned a child . . . unless the parent has either "willfully" failed to visit or "willfully" failed to support the child for a period of four consecutive months. . . . In the statutes governing the termination of parental rights, "willfulness" does not require the same standard of culpability as is required by the penal code. Nor does it require malevolence or ill will. Willful conduct consists of acts or failures to act that are intentional or voluntary rather than accidental or inadvertent. Conduct is "willful" if it is the product of free will rather than coercion. Thus, a person acts "willfully" if he or she is a free agent, knows what he or she is doing, and intends to do what he or she is doing. . . .
>
> The willfulness of particular conduct depends upon the actor's intent. Intent is seldom capable of direct proof, and triers-of-fact lack the ability to peer into a person's mind to assess intentions or motivations. Accordingly, triers-of-fact must infer intent from the circumstantial evidence, including a

person's actions or conduct.

*In re Audrey S.*, 182 S.W.3d 838, 863-64 (Tenn. Ct. App. 2005) (internal citations and footnotes omitted). This Court has held that failure to pay support is "willful" if the parent "is aware of his or her duty to support, has the capacity to provide the support, makes no attempt to provide support, and has no justifiable excuse for not providing the support." *In re J.J.C.*, 148 S.W.3d 919, 926 (Tenn. Ct. App. 2004) (quoting *In re Adoption of Muir*, No. M2002-02963-COA-R3-CV, 2003 WL 22794524, at *5 (Tenn. Ct. App. Nov. 25, 2003)).

For purposes of termination of parental rights, "token visitation" "means that the visitation, under the circumstances of the individual case, constitutes nothing more than perfunctory visitation or visitation of such an infrequent nature or of such short duration as to merely establish minimal or insubstantial contact with the child." Tenn. Code Ann. § 36-1-102(1)(C). Likewise, "token support" means that the support, under the circumstances of an individual case, is not significant considering the parent's means. Tenn. Code Ann. § 36-1-102(1)(B).

In its order terminating Mother's parental rights, the trial court made the following, relevant findings concerning abandonment by willful failure to visit:

> Arrangements were made by [DCS] and Wolf Counseling for regular visitation with the child. [Mother] only made six of those visits. [Mother] was provided with a cell phone number to contact the custodians regarding visitation . . . and still failed to communicate. [Mother's] last visit was July, 2014.

The record indicates that Mother visited Nevaeh during the relevant time period. Specifically, Mother visited on May 31, 2014, June 6, 2014, June 25, 2014, July 10, 2014, July 17, 2014, and July 30, 2014. However, in its order, the trial court found that these visits were merely token as Mother did not engage fully in the process of bonding and interacting with the child. Furthermore, the court was troubled by the fact that Mother did not demonstrate appropriate parenting skills during these visits, to-wit:

> 5/29/14 Mother was a no show.
> 5/31/14 Mother visited but the counselor was concerned due to lack of interest, mother's issues with controlling anger, and lack of parenting skills.
> 6/6/[1]4 The counselor was concerned about mother's anger issues and discussed how it negatively affects relationships.
>
> ***
>
> 6/18/14 Visitation was canceled; Mother reported to be "sick".

- 7 -

6/24/14 Mother was a no show
6/25/14 Mother was late and the counselor was concerned about mother's apprehension when it comes to interacting with the minor child.
7/10/14 Visitation occurred
7/17/14 Visitation occurred
7/30/14 Mother doesn't appear to bond with her daughter which is essential.

Mother was aware she could visit, she had the capacity to visit the child, and she was offered a phone to keep in contact with the family in case she needed to make changes in the visitation, yet she had no justifiable excuse for not visiting more than six times. These six visits and [Mother's] actions are not sufficient to get around abandonment.

Turning to the record, during the relevant time period, Mother attended six out of thirteen scheduled visits, spending approximately twelve hours with the Child. Perhaps more troubling is the fact that, during these few hours of visitation, Mother did not engage or interact with the Child so as to form any bond with her. In *State Department of Children's Services v. L.L.T.*, No. E2003-00501-COA-R3-JV, 2003 WL 23094559 (Tenn. Ct. App. Dec. 30, 2003), *perm. app. denied* (Tenn. April 19, 2004), this Court described such visitation as "perfunctory," noting that

[w]hile Mother may have attended all but one or two visitation sessions, the concept of "visitation" is much more than a mere physical presence. The testimony of the caseworker, which was believed by the trial court, indicates that Mother spent her visitation sessions applying makeup, sleeping, and arguing with Father, rather than properly focusing her attention on and caring for the child. Such "perfunctory" presence with the child does not preclude a finding of abandonment under the statute.

*State Dep't of Children's Servs. v. L.L.T.*, 2003 WL 23094559, at *4. The record clearly establishes that Mother's sporadic visitation with the Child has not resulted in the formation of a bond between Mother and Child. It appears that Mother visits when it is convenient for her, but does not engage when she is with the Child. As noted by the trial court, although Mother was provided a phone to contact the Child, she has not kept in touch with Appellees so as to learn about the Child's day-to-day activities. Mother could not answer simple questions such as the Child's favorite color, her teacher's name, or her favorite activities. From the totality of the circumstances, we conclude that the evidence preponderates in favor of the trial court's findings and that these findings provide clear and convincing evidence that Mother has abandoned this Child by willful failure to visit.

Concerning Mother's willful failure to pay support, in its order terminating her parental rights, the trial court found, in relevant part, as follows:

- 8 -

21. [Mother] has willfully failed to support or make reasonable payments toward the support of the child for a period of four (4) consecutive months . . . prior to her incarceration.

22. [Mother] has not paid child support for the benefit of her child, but the one payment she made was for her own benefit.

23. [Mother] did not pay child support until she was arrested for contempt. She made payments to purge so that she could get out of jail and made no further attempts to pay support. Mother knew she had a duty to pay support, she was aware of the Court order requiring support, she had the capacity to support the child but she made no attempt to do so. Mother had no justifiable excuse for nonpayment.

The evidence supports the trial court's findings. By order of June 2, 2014, the Chester County Juvenile Court ordered Mother to pay child support in the amount of $204.00 per month beginning July 1, 2014. The record shows that Mother made a payment of $20 on August 20, 2014. On September 22, 2014, Mother made a payment of $388.00. However, Mother testified that she made this payment to avoid jail time for contempt of the child support order. Concerning Mother's ability to pay support, both Mother and her mother testified that Mother is capable of working and that she and her fiancé paint and remodel houses. Missy G. testified that, since the Child has lived with Appellees, they have received no money, gifts, diapers, clothing, or any other support from Mother. It is undisputed that, at the time of trial, Mother was $3,500.00 in arrears on child support. From the totality of the circumstances, there is clear and convincing evidence to support the trial court's finding that Mother has abandoned this Child by willful failure to pay child support.

The trial court also found that Mother has abandoned the Child by wanton disregard. Concerning what constitutes wanton disregard, for purposes of this ground, this Court has explained that:

> Incarceration alone is not conclusive evidence of wanton conduct prior to incarceration. *In re Audrey S.*, 182 S.W.3d 838, 866 (Tenn. Ct. App. 2005). Rather, "incarceration serves only as a triggering mechanism that allows the court to take a closer look at the child's situation to determine whether the parental behavior that resulted in incarceration is part of a broader pattern of conduct that renders the parent unfit or poses a risk of substantial harm to the welfare of the child." *Id*. The statutory language governing abandonment due to a parent's wanton disregard for the welfare of a child "reflects the commonsense notion that parental incarceration is a strong indicator that there may be problems in the home that threaten the welfare of the child" and recognizes that a "parent's decision to engage in conduct

that carries with it the risk of incarceration is itself indicative that the parent may not be fit to care for the child." *Id*.

*In re C.A.H.*, No. M2009-00769-COA-R3-PT, 2009 WL 5064953, at *5 (Tenn. Ct. App. Dec. 22, 2009). We further note that the ground of abandonment by wanton disregard does not require that the conduct at issue occur within the four months prior to incarceration. *In re Audrey S.*, 182 S.W.3d at 865 ("This test has no analog to the first statutory definition of abandonment, and it is not expressly limited to any particular four-month period."). Rather, Tennessee courts may consider the parent's behavior throughout the child's life, even when the child is in utero. *See In re A.B.*, No. E2016-00504-COA-R3-PT, 2017 WL 111291, at *10 (Tenn. Ct. App. Jan. 11, 2017). In short, "[t]he actions that our courts have commonly found to constitute wanton disregard reflect a 'me first' attitude involving the intentional performance of illegal or unreasonable acts and indifference to the consequences of the actions for the child." *In re Anthony R.*, No. M2014-01753-COA-R3-PT, 2015 WL 3611244, at *3 (Tenn. Ct. App. June 9, 2015).

In its order terminating her parental rights, the trial court found, in relevant part, that:

24. [Mother's] conduct . . . showed a wanton disregard [for] the welfare of the child and a substantial risk of harm . . . . [Mother] has engaged in conduct prior to incarceration that exhibits a wanton disregard for the welfare of the child in that: (a) [Mother's] criminal history, drug use, and tests showing she was positive for meth as late as August 2015 showed a wanton disregard[;] (b) The testimony of her probation officer reflected her violations of probation[;] (c) [Mother] denied her drug problems [to the court]; (d) [Mother] denied her drug problem to the Parole Officer[;] (e) [Mother] denied her drug problem to the A and D assessor[;] (f) Yet, [Mother] continues to pick up charges for alcohol and drugs and meth[;] (g) [Mother] attempted[,] in these hearings[,] to deny her drug problem but finally admitted that she had used marijuana . . . . [;] (h) It is clear that [Mother] has had and still has a drug problem.

As discussed above, Mother has been involved in criminal activity throughout Nevaeh B.'s life. Despite being arrested in May of 2014 for theft, Mother did not curtail her criminal activity. Rather, while the May 2014 charges were pending, Mother was arrested again for theft on September 25, 2014. Although Mother was granted probation, she continued to engage in the use of illegal drugs. This resulted in a positive drug screen and incarceration for parole violation. By her own admission, Mother has often been "on the run," living in various locations so as to avoid arrest on outstanding warrants. In fact, Mother chose not to attend the first hearing on the petition to terminate her parental rights because she feared she would be arrested if she came to court. Such behavior clearly evinces a "me first" attitude. Mother's criminal activity, her continued use of illegal

- 10 -

drugs, and her failure to make any significant strides to remedy these issues demonstrates that parenting Nevaeh is not Mother's first priority. Her pattern of behavior, which resulted in her incarceration, clearly shows "a wanton disregard for the welfare of the child." Accordingly, the trial court did not err in terminating Mother's parental rights on the ground of abandonment by wanton disregard.

## B. Failure to Substantially Comply with the Requirements of the Permanency Plan

The trial court found, by clear and convincing evidence, that Mother's parental rights should be terminated on the ground of failure to substantially comply with the requirements of the permanency plan pursuant to Tennessee Code Annotated Section 36-1-113(g)(2). Tennessee Code Annotated Section 36-1-113(g)(2) provides that a parent's rights may be terminated when "[t]here has been substantial noncompliance by the parent with the statement of responsibilities in a permanency plan." However, "permanency plans are not simply a series of hoops for the biological parent to jump through in order to have custody of the children returned." *In re C.S., Jr.*, No. M2005-02499-COA-R3-PT, 2006 WL 2644371, at *10 (Tenn. Ct. App. Sept. 14, 2006). Rather,

> the requirements of the permanency plan are intended to address problems that led to removal; they are meant to place the parent in a position to provide the children with a safe, stable home and consistent appropriate care. This requires the parent to put in real effort to complete the requirements of the plan in a meaningful way in order to place herself in a position to take responsibility for the children.

*Id.*

Concerning this ground, in its order terminating Mother's parental rights, the trial court found, in relevant part, that:

> [Mother] failed to comply with the statement of responsibilities in the permanency plan . . . . The plan included goals for [Mother] to accomplish, which included: (a) obtain stable housing; (b) obtain employment; (c) remain drug free; (d) A and D assessment; (e) stay out of legal trouble. She still has not accomplished these goals; (f) she does not have a job, she was incarcerated on the date of the hearing, she has a probation violation, she tested positive for meth; (g) the order from the 2014 hearing laid out things for her to do in order to regain custody[, which] included to resolve all criminal charges, complete parenting classes, obtain stable housing, remain alcohol and drug free. She only went to one parenting class . . . ;(h). [Mother] has been on the run the whole course of these proceedings. (i) [Mother] has missed court hearings; (j)[Mother] has had warrants for her

arrest and knew if she came to court she would be charged and violated; (k) [Mother] missed several child and family team meetings, permanency planning meetings, and foster care review board meetings; (l) She was given opportunity to reunite with her child and didn't do it.

These findings are supported by the evidence. In fact, Mother's own testimony provides clear and convincing proof that she did not comply with the majority of the requirements set out in the permanency plan, to-wit:

Q. I believe we also talked earlier about the permanency plans that . . . list of requirements were on that plan, I believe you testified that you [did] the A&D assessment; is that correct?

A. Yeah.

Q. Okay. But you did not follow through with the recommendations because you were on the run; is that correct?

***

A. Yeah.

Q. So technically you didn't complete that step either; is that correct?

A. Right.

Q. So what steps of the permanency plan did you complete?

A. Well, the legal issues have kind of kept me from doing it. . . .

Q. So, again, of all the . . . steps that were listed, which one of those have you completed completely?

A. I've got a stable home now and environment for her.

***

Q. I'm sorry, but I was under the impression that you are currently incarcerated.

A. I am, but that's my residence.

Q. So how is being incarcerated providing a stable home for your child?

- 12 -

A. Because I'm taking care of my legal issues. That was on the permanency plan, too.

Q. You still have some pending?

A. Yeah.

Q. So you have not taken care of all of them; is that correct?

A. Yeah.

Q. So that step is not completed either. So which step have you completed?

A. I mean, I told you all of them, but you have something to say about every one of them, so I don't—

Q. It's a simple question. Of the six requirements, which ones have you completed?

A. I have a home for her to come to and a room and a safe environment when I get out.

Q. How long have you had that home?

A. For—it's been a couple of months.

Q. Prior to that, where did you live?

A. In Henderson . . . .

Q. How long did you live there?

A. For about nine months.

Q. Prior to that, where did you live?

A. With my parents.

Q. And during that time when you've had these three residen[ces], how often of that time were you incarcerated?

- 13 -

A. About eight months out of all of it.

Q. Do you believe that's stable?

A. No.

From Mother's testimony and the totality of the circumstances, we conclude that there is clear and convincing proof to support the trial court's finding that Mother failed to substantially comply with the reasonable requirements of the permanency plan.

## C. Persistence of Conditions

Tennessee Code Annotated Section 36-1-113(g)(3) provides that termination of parental rights may be based on persistence of conditions:

> (3) The child has been removed from the home of the parent or guardian by order of a court for a period of six (6) months:

> (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse or neglect and that, therefore, prevent the child's safe return to the care of the parent(s) or guardian(s), still persist;

> (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent(s) or guardian(s) in the near future; and

> (C) The continuation of the parent or guardian and child relationship greatly diminishes the child's chances of early integration into a safe, stable and permanent home.

The purpose behind the "persistence of conditions" ground for terminating parental rights is "to prevent the child's lingering in the uncertain status of foster child if a parent cannot within a reasonable time demonstrate an ability to provide a safe and caring environment for the child." *In re Arteria H.*, 326 S.W.3d 167, 178 (Tenn. Ct. App. 2010).

In *In re Audrey S.*, 182 S.W.3d at 872, this Court held that based on the statutory text and its historical development, the ground of persistence of conditions found in Tennessee Code Annotated Section 36-1-113(g)(3) provides a ground for termination of parental rights only where the prior court order removing the child from the parent's home was based on a judicial finding of dependency, neglect, or abuse. As discussed above, the juvenile court adjudicated Nevaeh to be dependent and neglected based on Mother's drug use and lack of supervision.

- 14 -

In its order terminating Mother's parental rights, the trial court found, in relevant part, that:

27. . . .[Mother] has not made such a lasting adjustment as to enable the child to be returned to her safely. [Mother] has failed to remain drug free; failed to admit or get help for her drug issues; failed to complete parenting [classes]; she has failed to maintain contact with the child and she maintained involvement in criminal activity.

28. [Mother] testified that during the 4 months prior to her incarceration, she was "on the run" attempting to evade arrest as a result of warrants, and remained on the run through the time the petition was filed.

29. [Mother] testified that she is in a relationship with Mr. G[.] who has a very extensive criminal history.

30. [Mother] testified that when she is released from jail, she will live with him and wants him to help her raise the minor child. She stated that she believes he will make a good parent to the minor child.

31. Exhibit 4 shows Mr. G[.'s] extensive criminal history which includes charges of assault, drug paraphernalia, violation, vandalism, open container violation, burglary, theft, aggravated burglary, assaults and etc.

32. Mr. G[.] is not a person the minor child should be around.

33. [Mother] puts Mr. G[.] above her child by making the decision to live with him and subsequently planning to return to him after she is released from jail.

34. [Mother] testified that she completed the A and D assessment but she didn't follow their requirements because she was on the run.

35. Pursuant to T.C.A. § 36-1-113(g)(3): The child has been removed from the home of the [Mother] by order of a court for a period of six (6) months and: (A) The conditions that led to the child's removal or other conditions that in all reasonable probability would cause the child to be subjected to further abuse and neglect and that, therefore, prevent the child's safe return to the care of the parent . . . still persist; (B) There is little likelihood that these conditions will be remedied at an early date so that the child can be safely returned to the parent . . . in the near future; and (C) The continuation of the parent . . . and child relationship greatly diminishes that child's chances of early integration into a safe, stable, and permanent home.

- 15 -

As a threshold requirement for applicability of the ground of persistence of conditions in termination of parental rights cases, the child must not only have been adjudicated dependent and neglected, but he or she must also have been removed from the defendant parent's home. Tenn. Code Ann. § 36-1-113(g)(3) (providing a ground for termination when "[t]he child has been removed from the home of the parent"). As discussed above, in its January 10, 2014, petition for adjudication of dependency and neglect, DCS averred, in part, that the Child was "without a parent, guardian or legal custodian, Tenn. Code Ann. § 37-1-102(b)(12)(A)." DCS further averred that "[Mother's] whereabouts are currently unknown." DCS noted that, at the time of removal and "during [DCS's] investigation," the child "was at the home of the maternal grandparents." From the record and DCS's averments, it is not clear that Nevaeh was removed from Mother's home. From the record, there is no indication that Mother lived in the maternal grandparents' home; in fact, the evidence suggests that Mother lived with Mr. G. when she was not "on the run" due to outstanding warrants. From the totality of the circumstances, we certainly cannot conclude by clear and convincing evidence that the threshold requirements, i.e., that the child be removed from the defendant parent's home, has been met in this case. *See, e.g., **In re Maria B.S.**, No. E2012-01295-COA-R3-PT, 2013 WL 1304616, at *11 (Tenn. Ct. App. March 4, 2013) ("No one removed the Children from Father--he never had the Children in the first place. There is case precedent to support Father's position that, without removal from that parent's home, the ground of persistent conditions is inapplicable."); *see also **In re Destaney D.**, No. E2014-01651-COA-R3-PT, 2015 WL 3876761, at *5 (Tenn. Ct. App. June 23, 2015) ("The legal deficiency concerning the trial court's determination regarding this ground for termination [, i.e., persistence of conditions,] lies in the fact that the Children were not removed from Father's home. The testimony at trial established that the reason for the Children's removal was drug abuse by the mother when the Children were in the mother's custody."); *accord **In re K.M.K.**, No. E2014-00471-COA-R3-PT, 2015 WL 866730, at *7 (Tenn. Ct. App. Feb. 27, 2015). Based on the foregoing authority, we hold that the statutory ground of persistence of conditions is not applicable to Mother under the facts presented here insomuch as the record contains no court order removing the child from Mother's home (on grounds of dependency and neglect or otherwise), and there is no evidence to suggest that Nevaeh was residing in Mother's home at the time of her removal. Accordingly, we reverse the trial court's order as to this ground.

## V. Best Interest

When at least one ground for termination of parental rights has been established, the petitioner must then prove, by clear and convincing evidence, that termination of the parent's rights is in the child's best interest. **White v. Moody**, 171 S.W.3d 187, 192 (Tenn. Ct. App. 2004). When a parent has been found to be unfit (upon establishment of ground(s) for termination of parental rights), the interests of parent and child diverge. **In re Audrey S.**, 182 S.W.3d at 877. The focus shifts to the child's best interest. **Id.** Because not all parental conduct is irredeemable, Tennessee's termination of parental rights

statutes recognize the possibility that terminating an unfit parent's parental rights is not always in the child's best interest. *Id*. However, when the interests of the parent and the child conflict, courts are to resolve the conflict in favor of the rights and best interest of the child. Tenn. Code Ann. § 36-1-101(d). Further, "[t]he child's best interest must be viewed from the child's, rather than the parent's, perspective." *Moody*, 171 S.W.3d at 194.

The Tennessee Legislature has codified certain factors that courts should consider in ascertaining the best interest of the child in a termination of parental rights case. As is relevant to the instant case, these factors include, but are not limited to, the following:

(1) Whether the parent or guardian has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent or guardian;

(2) Whether the parent or guardian has failed to effect a lasting adjustment after reasonable efforts by available social services agencies for such duration of time that lasting adjustment does not reasonably appear possible;

(3) Whether the parent or guardian has maintained regular visitation or other contact with the child;

(4) Whether a meaningful relationship has otherwise been established between the parent or guardian and the child;

(5) The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological and medical condition;

* * *

(7) Whether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner;

(8) Whether the parents or guardian's mental and/or emotional status would be detrimental to the child or prevent the parent or guardian from effectively providing safe and stable care and supervision for the child; or

(9) Whether the parent or guardian has paid child support consistent with the child support guidelines promulgated by the department pursuant to §

- 17 -

36-5-101.

Tenn. Code Ann. § 36-1-113(i). This Court has noted that "this list [of factors] is not exhaustive, and the statute does not require a trial court to find the existence of each enumerated factor before it may conclude that terminating a parent's rights is in the best interest of a child." *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Depending on the circumstances of an individual case, the consideration of a single factor or other facts outside the enumerated, statutory factors may dictate the outcome of the best interest analysis. *In re Audrey S.*, 182 S.W.3d at 877. As explained by this Court:

> Ascertaining a child's best interests does not call for a rote examination of each of Tenn. Code Ann. § 36-1-113(i)'s nine factors and then a determination of whether the sum of the factors tips in favor of or against the parent. The relevancy and weight to be given each factor depends on the unique facts of each case. Thus, depending upon the circumstances of a particular child and a particular parent, the consideration of one factor may very well dictate the outcome of the analysis.

*Moody*, 171 S.W.3d at 194.

In its order terminating Appellant's parental rights, the trial court made the following findings concerning Nevaeh's best interest:

> 43. [Mother] has not made an adjustment of circumstances, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent;
>
> 44. [Mother] has not maintained regular visitation or other contact with the child;
>
> 45. [Mother] has not established a meaningful relationship with the child;
>
> 46. [Mother] cannot provide a home that is healthy and safe. She is involved in criminal activity. The use of alcohol or controlled substances renders the parent . . . consistently unable to care for the child in a safe and stable manner.
>
> 47. The effect of a change of caretakers and physical environment is likely to have a negative effect on the child's emotional and psychological condition.
>
> 48. [Appellees] have been actively involved in the child's life since she was eleven (11) months old;

49. [Mother] has not paid child support[.]

The trial court's findings concerning Nevaeh's best interest are support by the record. As discussed in detail above, the child has been removed from Mother's custody since she was less than one year old. Since the child's removal, Mother has continued to engage in criminal activity, which has resulted in multiple arrests and incarceration. By her own testimony, Mother has failed to complete the requirements of the permanency plans in order to effect necessary changes in her conduct and circumstances so as to make her a good parent to this child. On release from jail, Mother stated, without reservation, that she plans to live with Mr. G., whose criminal history surpasses Mother's. While Mother has continued to engage in illegal drug use and criminal behavior, Nevaeh has lived with Appellees. Due to Mother's lack of commitment to visitation, no bond has been established between Nevaeh and Appellant. However, the record clearly establishes that Nevaeh has bonded with Appellees and considers them to be her parents. To remove Nevaeh, who is now four years old, from this stable environment would likely cause the child emotional and/or psychological distress. From the totality of the circumstances and the record, we conclude that there is clear and convincing evidence to support the trial court's finding that termination of Appellant's parental rights is in the child's best interest.

**VI. Conclusion**

For the foregoing reasons, we reverse the trial court's order as to the ground of persistence of the conditions that led to the child's removal. The trial court's order is otherwise affirmed. The case is remanded for such further proceedings as may be necessary and are consistent with this opinion. Costs of the appeal are assessed against the Appellant, Makayla B. Because Makayla B. is proceeding *in forma pauperis* in this appeal, execution for costs may issue if necessary.

_____
ARNOLD B. GOLDIN, JUDGE